# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DALE MORGAN, | No. 4:23-CV-00872 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| COMMONWEALTH OF PENNSYLVANIA, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### OCTOBER 2, 2023

## I.    BACKGROUND

In August 2021, Plaintiff Dale Morgan filed a three-count complaint against several Defendants: the Commonwealth of Pennsylvania (the "Commonwealth"); Pennsylvania State Police ("PSP"); Centre County, Pennsylvania ("Centre County"); several unspecified officers employed by these Pennsylvania law enforcement agencies; and Officer Michael D. Brown, who is employed by PSP.[1] Morgan filed his most recent amended complaint in November 2022.[2] This is a civil rights case brought pursuant to 42 U.S.C. § 1983.[3]

---

[1]    Complaint, Doc. 1.

[2]    Amended Complaint, Doc. 28.

[3]    This case was originally assigned to the Honorable Eric R. Komitee in the Eastern District of New York in August 2021. Doc. 2. Following a motion to change venue by all defendants, the case was transferred to the Middle District of Pennsylvania in May 2023. Motion to Change

In June 2023, Centre County filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim;[4] Morgan filed a brief in opposition to Centre County's motion,[5] and Centre County filed a Reply Brief.[6] Separately, Defendants the Commonwealth, PSP, and Brown filed a motion to dismiss;[7] Morgan has filed a brief in opposition to Defendant Brown's motion.[8]

The motions are now ripe for disposition. The motion to dismiss all claims against the Commonwealth and PSP is granted with prejudice. The motions to dismiss all claims against Brown, and Morgan's *Monell* claims against Centre County, are granted with leave to amend.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[9] and *Ashcroft v. Iqbal*,[10] "[t]o survive a motion to dismiss, a complaint must contain

---

Venue by all Defendants, September 15, 2022; Memorandum and Order, *Morgan v. Commonwealth of Pa. et al.*, 21-cv-4581 (E.D.N.Y. May 24, 2023) (Komitee, J.), Doc. 41.

[4]    Defendant Centre County's Motion to Dismiss, Doc. 46; Brief in Support of Defendant Centre County's Motion to Dismiss, Doc. 47.

[5]    Plaintiff's Response to Defendant Centre County's Motion to Dismiss, Doc. 60; Plaintiff's Brief in Opposition to Defendant Centre County's Motion to Dismiss, Doc. 61.

[6]    Reply Brief in Support of Defendant Centre County's Motion to Dismiss, Doc. 62.

[7]    Renewed Motion to Dismiss of Commonwealth, PSP and Brown, Doc. 55.

[8]    Plaintiff's Brief in Opposition to Defendant Michael Brown's Motion to Dismiss, Doc. 63.

[9]    550 U.S. 544 (2007).

[10]    556 U.S. 662 (2009).

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[11] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[12]

### B.    Materials Outside of Morgan's Complaint

Morgan attaches five documents in his papers against Centre County and asks the Court to take judicial notice. In its Reply, Centre County argues that this is an impermissible attempt to amend the pleadings.[13] The Commonwealth, PSP, and Brown also attach Brown's affidavit of probable cause ("Brown's Affidavit") and the warrant for Morgan's arrest (the "Arrest Warrant").[14]

When deciding a motion to dismiss, a Court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[15] Normally, to consider anything beyond those sources, a motion to dismiss must be

---

[11]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[12]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[13]   Doc. 62 at 2.
[14]   Docs. 55-1, 55-2.
[15]   *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

converted to a motion for summary judgment.[16]  But consideration of materials outside the complaint is not completely barred on a Rule 12(b)(6) motion.  A Court may consider any documents that are integral or explicitly relied upon in the complaint.[17]  "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[18]  "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[19]  It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document.[20]

First, the Court takes judicial notice of Brown's Affidavit and the Arrest Warrant, labeled as Exhibits A and B in Defendants the Commonwealth, PSP, and Brown's brief, and Exhibit Three in Morgan's brief.[21] Several courts in this Circuit have considered such documents to be public records,[22] and they are also "directly challenged" by, "integral to," and "explicitly relied upon" in Morgan's false arrest,

---

[16]  *See* Fed. R. Civ. P. 12(d).

[17]  *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

[18]  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[19]  *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).

[20]  *Faulkner*, 463 F.3d at 134.

[21]  Doc. 56 at 2 n.6. Doc. 61 at 10. Plaintiff erroneously labels the Affidavit of Probable Cause as "Exhibit two" in his Brief, but it is attached as Exhibit Three to the Brief. Accordingly, the Affidavit will be referred to as Exhibit Three when referring to Plaintiff's materials.

[22]  *Johnson v. City of Reading*, No. 21-4860, 2023 U.S. Dist. LEXIS 19110, at *3 n.1 (E.D. Pa. Feb. 6, 2023); *Williams v. Hammer*, No. 21-312, 2022 U.S. Dist. LEXIS 76287, at *2 n.3 (E.D. Pa. Apr. 26, 2022).

false imprisonment, and malicious prosecution claims,[23] and are therefore properly considered.

The Court also takes judicial notice of Exhibit Four, attached to Morgan's brief, as a public record.[24] Exhibit Four is a document released by Centre County, titled "Community Facilities and Services- Public Safety Handbook."[25] While taking judicial notice of webpages belonging to private companies at the motion to dismiss stage is generally inappropriate,[26] the Third Circuit has followed the prevailing wisdom that documents available on government websites are public records.[27] This Court has previously taken judicial notice of municipal websites in this precise context—to establish the relationship between a County and local law enforcement agencies when ruling on a motion to dismiss a *Monell* claim.[28]

However, the Court cannot take notice of Exhibit Five, which contains content from the Centre County Public Safety Training Center's ("the Center") website.[29]

---

[23] *See In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993); *In re Burlington Coat Factory Sec. Litig*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[24] *See Williams v. Long*, 585 F.Supp. 2d 679, 688 n.4 (D. Md. 2008) (explaining that Electronically Stored Information is included within "other publications" under Federal Rule of Evidence 902(5), and therefore self-authenticating)

[25] Doc. 61-4.

[26] *Schmidt v. Skolas*, 770 F.3d 241, 249-250 (3d Cir. 2014).

[27] *In re Google Inc.*, 806 F.3d 125, 133 n.12 (3d Cir. 2015). *See also Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017) (taking judicial notice of administrative scheme based on government websites "made publicly available by governmental entities").

[28] *Rodriguez-Melendez v. Dauphin Cnty Drug Task Force*, No. 1:14-CV-00012, 2014 U.S. Dist. LEXIS 179391, at *6 (M.D. Pa. Dec. 2, 2014) (Mehalchick, M.J.), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 343 (M.D. Pa. Jan. 5, 2015). *See also Mincy v. Wetzel*, No. 1:20-CV-717, 2021 U.S. Dist. LEXIS 212854 at *9 n.1 (M.D. Pa. Nov. 3, 2021) (taking judicial notice of Department of Corrections' website as matter of public record).

[29] Doc. 61-5.

The Center is actually managed and operated by the Central Pennsylvania Institute of Science and Technology, meaning that the website is not government-maintained.[30] In any event, the Center's activities would be of no help to Morgan's *Monell* claim.[31]

Finally, the Court will not take judicial notice of Exhibits One and Two. Exhibit One is the LinkedIn page of Officer Ralph Ralston, a Centre County Detective; Exhibit Two is Centre County's Facebook page.[32] "Not every website is a 'source[]' whose accuracy cannot reasonably be questioned,' and it is generally inappropriate for a court to rely on internet research when considering a motion to dismiss."[33] Courts have therefore rightly refused to take judicial notice of unverified non-public internet information, including online networking profiles.[34]

## C. Facts

In an investigation centering on identity theft, Morgan was mistakenly arrested because the true culprit stole his identity. On January 4, 2019, a Volkswagen rental car traveling on the Interstate-80 was stopped by the PSP for a traffic

---

[30] *See* https://ccpstc.cpi.edu/about/.

[31] The Center's policy is set by nine representatives, only one of which is from Centre County, and it merely offers optional training services to municipal forces; nothing indicates that this training relates to the proper procedures involved in applying for a warrant. *Id.*

[32] Doc. 61-1, 61-2.

[33] *Havens v. James*, 76 F.4th 103, 109 n.4 (2d Cir. 2023).

[34] *Schmidt v. Skolas*, 770 F.3d 241, 249-250 (3d Cir. 2014). *See, e.g.*, *Richcourt Allweather Fund, Inc. v. Midanek*, No. 13-4810, 2014 U.S. Dist. LEXIS 54679, at *16-17 (D.N.J. Apr. 17, 2014) (refusing to take judicial notice of a LinkedIn profile).

violation.[35] The driver, Horace Henry, provided a counterfeit New York Driver's License.[36] This license displayed Henry's photograph, but Morgan's identifying information.[37] Based on Henry's counterfeit license, the officers misidentified Henry as Morgan in their incident report.[38]

Also in early 2019, the Department of Homeland Security-HIS, PSP, and Centre County local law enforcement agencies began investigating an identity theft ring, which used stolen identities to create fraudulent Sprint accounts.[39] Officer Brown's affidavit states that after these accounts requested delivery of smart phones, the co-conspirators would show counterfeit identification to receive deliveries from trucks outside of their identity theft victims' residences.[40] Officers observed co-conspirator Sherica Chambers parked at one of these residences during such a delivery.[41] Officers subsequently learned of the make, model, and license plate of a Volkswagen rental car rented by Chambers at John F. Kennedy Airport in New York City;[42] the car was observed in the area during many of the deliveries, being driven by Chambers and co-conspirator Andrew Herdsman.[43]  This was the same car that

---

[35] Amended Complaint, Doc. 28 ¶12; Doc. 55-1 at 6.
[36] Doc. 28 ¶14.
[37] *Id.*
[38] Doc. 55-1 at 6.
[39] Doc. 28 ¶10.
[40] Doc. 55-1 at 5.
[41] *Id.* at 6.
[42] Doc. 55-1 at 5.
[43] Doc. 28 ¶11; Doc. 55-1 at 5-6, 8.

Henry was driving at the time of the traffic stop in early January, rented in Chambers' name.[44]

Officers subsequently arrested Herdsman on January 24, 2019.[45] Herdsman was interviewed by three officers, one of whom was Officer Brown.[46] During the interview, Herdsman identified another co-conspirator by an alias, "Metro,"[47] whose real name was Horace Henry.[48] Brown's affidavit states that, when Herdsman was shown a photograph of Chambers, Herdsman identified her "without hesitation."[49] The affidavit reveals no inquiries into whether Morgan was "Metro," and Morgan alleges no attempt was made.[50] This was despite several discrepancies which Herdsman, who had interacted with Henry face-to-face, may have perceived from Morgan's picture: Henry is approximately 5'3" tall, while Morgan is 6'1"; Henry is a black man with a fair-skinned complexion, while Morgan is a black man with a darker complexion; and Henry weighs approximately 150 pounds, while Morgan weighs approximately 220 pounds.[51]

After interviewing Herdsman, Brown applied for a warrant for Morgan's arrest. Morgan alleges that Brown did so "blindly and summarily," without any

---

[44] Doc. 55-1 at 5-7.
[45] Doc. 28 ¶16.
[46] *Id.* ¶17.
[47] *Id.* ¶18.
[48] Doc. 55-1 at 6; Doc. 28 ¶¶12-13.
[49] Doc. 55-1 at 5.
[50] Doc. 26 ¶¶19, 29.
[51] *Id.* ¶15.

additional investigation or corroboration of Morgan's identity, and based solely on the information obtained from Henry's fraudulent identification during his traffic stop.[52] A Centre County magisterial district judge signed Brown's warrant on February 1, 2019,[53] and the Centre County District Attorney's Office brought charges against Morgan "on or about" the same day.[54]

In March 2019, Detective Michael Langellotti, employed by the New York City Police Department, received the warrant for Morgan's arrest.[55] Langellotti also received unspecified instructions from Brown and others from Centre County.[56] Langellotti then issued a complaint against Morgan as a fugitive from justice, went to Morgan's home in the early morning, and arrested him.[57] Defendants also sent interstate communications to the Queens County District Attorney's Office, who brought suit on their behalf.[58] Morgan is a resident of Kings County, New York, and has never entered Pennsylvania; this was his first and only arrest.[59] As a result of the warrant, Morgan was denied bail and held in detention for nine days.[60]

On March 26, 2019, Officer Brown wrote an email to the Queens County District Attorney's Office, stating that subsequent investigation "has led to the

---

[52] *Id.* ¶¶19-20, 28, 30, 35.
[53] *Id.* ¶21.
[54] *Id.* ¶65.
[55] *Id.* ¶22.
[56] *Id.* ¶¶22, 24, 36.
[57] *Id.* ¶22.
[58] *Id.* ¶37.
[59] *Id.* ¶¶6, 25.
[60] *Id.* ¶34.

withdraw[al] of all charges against Mr. Dale Morgan," and all charges against him were eventually dismissed.[61] Despite Defendants' determination that Morgan was innocent, Centre County employees insisted that Morgan appear in Pennsylvania to address his false charges before they were dismissed.[62]

Morgan has now filed a three-count complaint under 42 U.S.C. § 1983. He first brings a claim against all Defendants, alleging false arrest and false imprisonment in violation of the Fourth and Fifth Amendments.[63] Second, Morgan brings a *Monell* claim against the Commonwealth, PSP, and Centre County, alleging that inadequate training, policies, practices, customs and usages caused Morgan's false arrest and imprisonment.[64] Third, Morgan brings a claim against all Defendants for malicious prosecution.[65]

### D.    Pennsylvania and PSP's Motion to Dismiss

In his amended complaint, Morgan brings three claims against the Commonwealth and PSP.[66] However, in his most recent briefing, Plaintiff concedes that this Court should dismiss these claims,[67] and for good reason. The Eleventh Amendment provides the states with complete immunity from suit by citizens of any

---

[61]  *Id.* ¶38.
[62]  *Id.* ¶40.
[63]  *Id.* at 8-9.
[64]  *Id.* at 9-12.
[65]  *Id.* at 12-16.
[66]  *Id.*
[67]  Doc. 63 at 16; Doc. 56 at 5-6.

state,[68] and such immunity extends to suit against agencies of those states, including

law enforcement agencies such as PSP.[69] However, as the Supreme Court of the

United States explained in *Monell v. Department of Social Services*, the Eleventh

Amendment's shield does not reach municipalities, such as Centre County.[70] Nor

does it reach an officer sued in his individual capacity, such as Brown.[71]

Accordingly, the Eleventh Amendment bars suit against the Commonwealth and

PSP, and Morgan's claims against those Defendants are dismissed with prejudice.

### E.   Centre County's Motion to Dismiss

Morgan also argues that Centre County should be liable for the actions of the

Commonwealth, PSP and its officers, and local law enforcement agencies including

the Spring Township Police. The Court does not reach the merits of these claims

because nothing in Morgan's amended complaint or the attachments plausibly

alleges that Centre County had any role in these bodies' actions. Morgan also argues

that Centre County should be liable for the actions of the Centre County District

Attorney's Office. However, counties can only be liable for a prosecutor's

policymaking, administrative, or investigatory acts. Morgan's complaint does not

---

[68]   U.S. Const., amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ."); *Hans v. Louisiana*, 134 U.S. 1 (1980).

[69]   *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989).

[70]   436 U.S. 658 (1978).

[71]   *Ex Parte Young*, 209 U.S. 123 (1908). Money damages are permissible so long as the damages are attributable to the officer himself and are not paid from the state treasury. *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974).

plausibly allege that any policy, administrative, or investigatory decision by the Centre County District Attorney's Office caused him constitutional injury. Therefore, all claims against Centre County are dismissed, with leave to amend.

Respondeat superior liability is unavailable against municipal bodies under § 1983.[72] The violations must result from the execution of a policy or custom which fairly reflects that body's official policy.[73] A § 1983 plaintiff cannot survive dismissal through "conclusory allegations against defendants as a group."[74] An adequate allegation cannot, where multiple defendants "occupy different positions and presumably have distinct roles in the alleged conduct," engage in "impermissibly vague group pleading;" it must instead specify "which defendants engaged in what wrongful conduct."[75]

Morgan's complaint contains only references to "Centre County employees" alongside a litany of other Defendants, without any explanation of each actor's role in the alleged conduct.[76] Morgan's statement that "[a]t all material times each of the defendants was the agent of each other defendant" is not much better.[77] Morgan's description of local law enforcement agencies is likewise shaky at best, with only one paragraph actually naming the relevant Spring Township Police Department

---

[72] *Monell v. New York City Dep't of Social Servs*, 436 U.S. 658, 691 (1978).
[73] *Id.*
[74] *Galicki v. New Jersey*, No. 14-169, 2015 U.S. Dist. LEXIS 84365, at *2 (D.N.J. June 29, 2015).
[75] *Falat v. Cnty of Hunterdon*, No. 12-6804, 2013 U.S. Dist. LEXIS 37398, at *3 (D.N.J. Mar. 19, 2013).
[76] Doc. 28 ¶¶35, 36, 46, 53.
[77] *Id.* ¶63.

officer and his role in the initial investigation.[78] These allegations communicate nothing about the relationship among the defendants, and fail to explain Centre County's specific involvement in the decisions of the Commonwealth, PSP or Brown which led to Morgan's arrest, imprisonment and prosecution.

Morgan also contends that "Defendant Centre County authorizes and empowers . . . its local law enforcement agencies including police personnel working for the Spring Township Police Department."[79] However, as Centre County highlights, Pennsylvania counties often have no role in supervising or controlling municipal law enforcement agencies.[80] Morgan's attachment does not prove otherwise. Exhibit Four, a description of safety-related community facilities and services in Centre County, states that "[t]he provision and coordination of public safety in Centre County requires constant monitoring by County and municipal officials," and then provides a description of the various departments within the County, including its local police agencies.[81] That "county *and* municipal officials" provide and coordinate for public safety does not explain what Centre County's role is in training local police agencies and is perfectly consistent with the idea that it does not oversee or empower them.

---

[78]   *Id.* ¶17.

[79]   *Id.* ¶10.

[80]   Doc. 47 at 9. *See, e.g.*, *Pena v. City of Lancaster*, No. 21-CV-590, 2022 U.S. Dist. LEXIS 1680, at *7 (E.D. Pa. Jan. 5, 2022).

[81]   Doc. 61-4 at 2.

The final basis for Centre County's liability is through the activities of the Centre County District Attorney's Office. Prosecutors have a "dual or hybrid status" as both state and county-level actors.[82] When a prosecutor engages in conduct in furtherance of a criminal prosecution, he acts as a state actor, and is absolutely immune.[83] Therefore, no liability can be had based on Morgan's prosecution.

When a prosecutor acts in a policymaking capacity to make administrative and investigatory decisions on a local level, he acts as a county actor.[84] A municipality and its departments are treated as a single entity for purposes of § 1983 liability.[85] A § 1983 claim against a municipality must show (1) an underlying constitutional violation (2) caused by the municipality's execution of a municipal policy or custom.[86] The plaintiff must also plausibly allege that the identified policy, custom, or training or supervision deficiency caused the constitutional violation.[87]

For liability based on failure to train or supervise, that failure must amount to a "deliberate indifference" to the rights of persons with whom employees will come into contact.[88] Deliberate indifference usually requires showing a "pattern of similar

---

[82]  *Coleman v. Kaye*, 97 F.3d 1491, 1499 (3d Cir. 1996).
[83]  *Imbler v. Pachtman*, 424 U.S. 409, 430-41 (1976).
[84]  *Carter v. City of Phila.*, F.3d 339, 352-53 (3d Cir. 1999).
[85]  *Jackson v. City of Erie Police Dep't*, 570 F.App'x 112, 114 (3d Cir. 1997); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997).
[86]  *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).
[87]  *Canton v. City of Harris*, 489 U.S. 378, 385 (1989).
[88]  *Id.* at 388.

constitutional violations by employees."[89] In rare circumstances, liability may be demonstrated if "the need for more or different training" was so "plainly obvious" that no pattern of abuse is required.[90] "Liability cannot rest only on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of continued injury."[91] The court must weigh the "likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle the situation will violate citizens' rights."[92]

Morgan's allegation that the Centre County District Attorney's Office provided inadequate training and supervision on the process of applying for warrants is not clearly in his complaint. It is, instead, noted in his his brief in opposition to Centre County's Motion to Dismiss.[93] This is an impermissible attempt to amend pleadings. Be that as it may, Morgan remains unclear as to what specific training or supervision is lacking here, aside from training on "probable cause" in warrants.[94]

Probable cause is a notoriously complex and fact-specific concept; training on probable cause could span training on most of police work. Courts finding *Monell*

---

[89]  *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *see also Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019) (citing *Carter v. City of Phila.*, F.3d at 357).
[90]  *Canton*, 489 U.S. at 390.
[91]  *Thomas v. Cumberland Cnty*, 749 F.3d 217, 226 (3d Cir. 2014).
[92]  *Bd. of Cnty Comm'rs v. Brown*, 520 U.S. 397, 409 (1997).
[93]  *Compare* Doc. 28 at ¶¶47-48 *with* Doc. 61 at 12-13.
[94]  Doc. 28 at ¶¶54, 56.

liability have generally done so based on more concrete failures.[95]   And while Morgan states that a similar incident of wrongful arrest due to inadequate investigation occurred once before, to an individual named Vladimir Esguerra,[96] Morgan provides no details about the Esguerra incident. The Court has no way to determine if this matter was similar, or even if it had anything to do with the Centre County District Attorney's Office.

Monell liability may also attach based on a custom or usage when a "persistent and widespread" practice of government officials is so "permanent and well-settled as to constitute a custom or usage with the force of law."[97] But again, excising impermissibly vague pleadings,[98] Morgan does not allege any specific custom of the District Attorney's Office, and fails to set out the specific details of the District Attorney's Office's practice or customs, other than securing warrants "without adequate investigations" and "without sufficient information."[99] There is no heightened pleading standard for a Monell claim, but more is needed; a plaintiff must "identify a custom or policy, and specify what exactly that custom or policy was."[100]

---

[95]   See, e.g., Berg v. Cnty of Allegheny, 219 F.3d 261, 276-77 (3d Cir. 2000); Carter v. City of Phila. F.3d 339, 352-53 (3d Cir. 1999) (citing Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992)).

[96]   Doc. 28 ¶51.

[97]   Monell v. New York City Dep't of Social Servs, 436 U.S. 658, 690 (1978); Brown v. Muhlenberg Twp., 269, F.3d 205, 215 (3d Cir. 2001).

[98]   See Doc. 28 at ¶¶47-48, 55.

[99]   Id.

[100]   Small v. Lower Paxton Twp., No. 1:22-cv-01146, 2023 U.S. Dist. LEXIS 124829, at *29 (M.D. Pa. July 19, 2023) (quoting McTernan v. City of New York, 564 F.3d 636, 658 (3d Cir. 2009)).

Finally, the amended complaint alleges that Centre County Prosecutors had some role in the investigation, but Morgan does not state what that role is. Moreover, the allegation that the District Attorney's Office "did not make the requisite preliminary inquiries . . . to determine the true perpetrator of the alleged offenses"[101] it is too vague from the face of the complaint to support liability on this basis. Morgan must more clearly allege what role prosecutors had in the investigation, what specific inquiries they did not make, and how this resulted in a specific constitutional injury.

### F.   Brown's Motion to Dismiss

Morgan brings three § 1983 causes of action against Officer Brown, presented in two counts: false arrest and false imprisonment, and malicious prosecution.[102] Brown contends that the false arrest or imprisonment claims fail because he was not "personally involved" in Morgan's arrest and imprisonment.[103] The Court rejects Defendant's argument.[104] However, assuming Brown's affidavit of probable cause to be truthful, Morgan has no false arrest, false imprisonment, or malicious prosecution claim against Brown based on Brown's affidavit of probable cause or

---

[101] *See* Doc. 28 ¶38, 52.

[102] *Id.* at 8-9, 12-16.

[103] Doc. 56 at 6-8.

[104] *See Berg v. Cnty of Allegheny*, 219 F.3d 261, 272 ("§ 1983 liability for an unlawful arrest can extend beyond the arresting officer to other officials whose intentional actions set forth the arresting officer in motion"); *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (filing affidavit of probable cause with false statement or omission can support false arrest claim); *Diaz v. Carstaphen*, No. 22-cv-7465, 2023 U.S. Dist. 126688, at *11-12 (D.N.J. July 24, 2023) (personal involvement for supervisory authority over arrest).

the execution of his arrest warrant, as both were approved by a neutral magistrate. Nor does Brown's alleged failure to investigate support these claims based on Morgan's pleaded theories of liability. For the reasons stated below, Brown's motion to dismiss all counts is granted, with leave to amend.

Morgan's claims against Brown ultimately reduce to probable cause, and all fail to reach that issue due to the strength of Brown's qualified immunity defense.[105] A false arrest claim requires "(1) that there was an arrest; and (2) that the arrest was made without probable cause."[106] False imprisonment claims generally overlap with false arrest claims, requiring (1) that a plaintiff was detained and (2) that the detention was unlawful.[107] Morgan adequately alleges that he was arrested and imprisoned,[108] so the dispute lies in probable cause existed.

"To prevail on a malicious prosecution claim, a plaintiff must demonstrate that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with

---

[105] Courts have discretion to determine whether to tackle qualified immunity before the underlying claim. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[106] *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilks-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)).

[107] *Wallace v. Kato*, 549 U.S. 384, 389 (2007).

[108] Doc. 28 ¶¶22, 24.

the concept of seizure as a consequence of a legal proceeding."[109] Morgan has adequately alleged many of these elements as well and, therefore, again the only dispute is whether there existed probable cause.

Assuming the truthfulness of Brown's affidavit, Morgan's false arrest and malicious prosecution claims would have to clear an astoundingly high bar to evade a qualified immunity defense. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional rights, and (2) that the right was 'clearly established' at the time of the challenged conduct."[110] "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing is right."[111]

Where an alleged constitutional violation involves an arrest pursuant to a warrant, "the fact that a neutral magistrate has issued the warrant is the clearest indication that the officers acted in an objectively reasonable manner"[112] and the magistrate is given "great deference."[113] The arrest is valid unless "it is obvious that no reasonably competent officer would have concluded that a warrant should

---

[109] *Harvard*, 973 F.3d at 206 (quoting *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

[110] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[111] *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (cleaned up).

[112] *Messerschmidt v. Millender*, 565 U.S. 535, 546-57 (2012).

[113] *United States v. Leon*, 468 U.S. 897, 913-14 (1984).

issue."[114] The warrant must be "so lacking in indicia of probable cause" that "it is apparent from a 'simple glance' at the face of the warrant itself, not a defect that would 'become apparent only upon a close parsing of the warrant application.'"[115] "The threshold for establishing this exception is a high one"[116] because "an officer cannot be expected to question the magistrate's probable-cause determination."[117] The same is true for prosecutions initiated by the affidavit of probable cause; indeed, the claim is "twice disadvantaged" as it has also been approved by a prosecutor.[118]

As it has developed, there may have been a lack of probable cause to arrest Morgan, but it cannot be said that its deficiency is apparent absent a close parsing of the warrant application. Successful plaintiffs in this Circuit generally demonstrate such deficiencies through "bare bones" or "skeletal" affidavits containing, at most, a few general sentences.[119] Here, Officer Brown filed a detailed, four-page affidavit outlining the activities of an identity fraud ring. He outlined the results of surveillance and Andrew Herdsman's interview, which were used to connect Sherica Chambers to the identity fraud scheme, and then correctly tied Chambers' rental car

---

[114] *Malley v. Briggs*, 475 U.S. 335, 342 (1986).

[115] *Armstrong v. Asselin*, 734 F.3d 984, 992 (9th Cir. 2013) (citing *Messerschmidt*, 565 U.S. at 556).

[116] *Messerschmidt*, 565 U.S. at 547.

[117] *United States v. Leon*, 468 U.S. 897, 922-923 (1984).

[118] *Fiore v. City of Bethlehem*, 510 F.App'x 215, 220 (3d Cir. 2013); *Handy v. Palmiero*, No. 17-3107, 2019 U.S. Dist. LEXIS 142639, at *18 (E.D. Pa. Aug. 22, 2019).

[119] *Fiore*, 510 F.App'x at 221 (3d Cir. 2013); *United States v. Pavulak*, 700 F.3d 651, 664 (3d Cir. 2012) (collecting examples of "bare bones" affidavits); *Kolhaas v. N.J.*, Civ. No. 16-1564, 2017 U.S. Dist. LEXIS 175134, at *14-15 (D.N.J. Oct. 23, 2017).

to "Metro" by confirming that the car was still being rented in Chambers' name at the time of Henry's traffic violation.

Despite Morgan's protests to the contrary, his complaint does not allege that Brown could verify Morgan's identity through any readily available information, other than the traffic report itself. Morgan does not allege that an image of Metro was available to Brown,[120] and Brown was not present at the initial traffic stop. If a picture of Henry, the man who was actually Metro, was available in the traffic incident report or elsewhere, that fact is not alleged in the complaint. Nor is showing Morgan's picture to Herdsman a readily available method of corroborating his identity, as the word of an informant is far from an "objective" determination.[121]

Although Morgan is correct that a reasonable officer should expect the ringleader of an identity fraud conspiracy to present fraudulent identification, only a "close parsing" of the application reveals these deficiencies. It is well-settled under qualified immunity that it is reasonable to rely on "what proves to be the flawed conclusions of a fellow officer."[122] Here, the traffic officers mistakenly concluded that Henry's counterfeit identity was authentic, and Brown relied on their traffic report to connect Morgan to the driver. Moreover, Brown did corroborate that the

---

[120] *See Rothermel v. Dauphin Cnty.*, No. 1:16-CV-1669, 2020 U.S. Dist. LEXIS 51951, at *18 n.6 (M.D. Pa. Mar. 26, 2020).

[121] *Cf. Kelly v. Jones I*, 148 F. Supp. 395, 403 (E.D. Pa. 2015).

[122] *Mills v. Golden Nugget Atl. City, LLC*, No. 19-19610, 2021 U.S. Dist. LEXIS 156166, at *23 (D.N.J. Aug. 18, 2021) (quoting *Rogers v. Powell*, 120 F.3d 446, 454-55 (3d Cir. 1997)).

Volkswagen was being rented by Chambers at the time of the traffic stop, and knew that that the Volkswagen had been rented from the John F. Kennedy Airport. Additionally, Brown knew that the identity theft ring would use fraudulent identification to obtain packages from Pennsylvania residents, making it reasonable to believe that Morgan would not carry counterfeit identification from the residents of other states. This makes Morgan's Queens, New York address a corroborating rather than a detracting factor in Brown's affidavit.

Brown certainly could have—and should have—taken more steps to corroborate whether Morgan was Metro. But an officer is not required to exhaust every potential avenue of investigation before seeking to obtain a warrant, and any failure to "ferret out mistakes made by others"[123] is not obvious without a close parsing of the circumstances surrounding the affidavit.

This does not mean that plaintiffs are always remediless when false arrest, false imprisonment, and malicious prosecution occur pursuant to a facially valid warrant. All three causes of action are available where officers (1) "knowingly and deliberately, or with a reckless disregard for the truth, made false statements and

---

[123]  *See Rothermel*, 2020 U.S. Dist. LEXIS 51951, at *26.

omissions that create a falsehood in applying for a warrant;" and (2) "such statements or omissions are material, or necessary, to the finding of probable cause."[124]

But Morgan equivocates as to the theory underlying his false arrest, false imprisonment, and malicious prosecution claims against Brown, and it is unclear whether alleging that Brown "blindly and summarily" applied for the Arrest Warrant is meant to allege a falsehood or omission.[125] As Morgan never explicitly contests the completeness or sincerity of Brown's affidavit, the Court will construe his pleadings in this way; the true gravamen of Morgan's complaint is geared toward the thoroughness of Brown's underlying investigation[126] and whether probable cause existed. Any such claim must fail, as it cannot be said that no reasonable officer would believe a warrant should issue here. Consequently, the allegations do not establish that Morgan's constitutional rights were violated, let alone that those rights were clearly established.

Morgan also states that his imprisonment was prolonged due to a failure to investigate his identity.[127] While there is no clearly established "failure to investigate" cause of action under § 1983, [128] some courts have held that a plaintiff

---

[124] *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)); *see also Goodwin v. Conway*, 868 F.3d 321, 327-28 (3d Cir. 2016); *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469 (3d Cir. 2016); *Geness v. Cox*, 902 F.3d 344, 356-57 (3d Cir. 2018).

[125] Doc. 28 ¶20.

[126] *Id.* ¶¶19-20, 30, 35, 49, 50, 52, 67, 68.

[127] Doc. 28 ¶¶34, 76.

[128] *See Baker v. McCollan*, 443 U.S. 137, 145-46 (1979); *White v. Andrusiak*, No. 14-7045, 2015 U.S. Dist. LEXIS 110076, at *2-3 (E.D. Pa. Aug. 19, 2015); *Wright v. City of Phila.*, 229

who was lawfully arrested may bring a false imprisonment claim where the failure to investigate unconstitutionally prolongs his imprisonment.[129] But the boundaries of this theory of liability are uncertain,[130] and the Court does not opine on its viability. It is not clear from Morgan's amended complaint or briefings that he intended to plead this theory of liability, so the Court will not address it here.

## III.   CONCLUSION

Defendants' motions to dismiss pursuant to Rule 12(b)(6) are granted. Plaintiff is granted leave to amend his claims against Centre County and Officer Brown. Leave to amend any claims against the Commonwealth of Pennsylvania or Pennsylvania State Police is denied, as any attempted amendment would be futile due to the existence of the Eleventh Amendment.

As such, Plaintiff will be given fourteen days from today's date to file an amended complaint.  If no amended complaint is filed, the action will be subject to dismissal with prejudice.

---

F.Supp.3d 322, 332 n.3 (E.D. Pa. 2017); *Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020); *Geness v. Cox*, 902 F.3d 344, 354 n.5 (3d Cir. 2018).

[129] *See Kelly v. Jones I*, 148 F. Supp. 395, 402 (E.D. Pa. 2015). Likewise, malicious prosecution claims may be available "where an officer's involvement does not end with the issuance of a warrant or the act of arrest." *Kelly v. Jones II*, 148 F.Supp. 3d 395 (E.D. Pa. 2015) (citing *Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007)); *see also Thomas v. City of Phila.*, 290 F.Supp. 3d 371, 379 (E.D. Pa. 2018).

[130] *Baker v. McCollan* initially indicated that this cause of action may be unavailable. 443 U.S. 137, 140-41, 145-46 (1979). Subsequent decisions have held otherwise. *See, e.g.*, *Kelly I*, 148 F. Supp. at 402; *Kelly II*, 148 F. Supp. at 395; *Rodriguez v. Roth*, 516 F.Supp. 410, 412 (E.D. Pa. 1981); *Cannon v. Macon Cnty*, 1 F.3d 1558 (11th Cir. 1993); *Patton v. Pryzbylski*, 822 F.2d 927 (7th Cir. 1987).

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge