## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DALE MORGAN,                                No. 4:23-CV-00872

        Plaintiff,                           (Chief Judge Brann)

    v.

CENTRE COUNTY, *et al.*,

        Defendant.

## MEMORANDUM OPINION

### APRIL 18, 2024

## I.    PROCEDURAL HISTORY

Plaintiff Dale Morgan initiated this § 1983 action in August 2021 with the filing of a Complaint in the United States District Court for the Eastern District of New York.[1] In his initial Complaint, Morgan named as Defendants the Commonwealth of Pennsylvania, Pennsylvania State Police, Centre County, Pennsylvania, several unidentified law enforcement officers, and Pennsylvania State Police Officer Michael D. Brown.[2] Morgan filed an Amended Complaint in November 2022,[3] which the Defendants moved to dismiss.[4] The Commonwealth, PSP, and Brown also filed a motion to change venue.[5] The Honorable Eric R.

---

[1]  Compl., Doc. 1.
[2]  *Id.*
[3]  First Am. Compl. ("FAC"), Doc. 28.
[4]  Commw. EDNY Mot. to Dismiss, Doc. 31; Centre Cnty. EDNY Mot. to Dismiss, Doc. 34.
[5]  Mot. to Transfer, Doc. 29.

Komitee granted the latter request, transferring the case to the Middle District of Pennsylvania, and denying the motions to dismiss without prejudice to renew before the transferee court.[6] Following transfer, Defendants again moved to dismiss the Amended Complaint.[7] This Court granted those motions, dismissing the claims against the Commonwealth and PSP with prejudice, and granting Morgan leave to amend his claims against Brown, and Centre County.[8]

Morgan filed a Second Amended Complaint on December 8, 2023.[9] In addition to Centre County and Brown, Morgan now also names Centre County District Attorney Bernie Cantorna, Centre County prosecutor Mark Smith ("the District Attorneys"), the Spring Township, Pennsylvania Police Department and Spring Township Police Officer Luke Nelson (together "STPD"), an unidentified John Doe PSP officer, and an unidentified John Doe attorney with the Centre County District Attorney's Office.[10] Morgan asserts three claims for relief: False Arrest and Imprisonment in violation of the Fourth and Fifth Amendments against all Defendants (Count I); *Monell* claims against Centre County and Spring Township (Count II); and Malicious Prosecution against all Defendants (Count III). All

---

[6]   May 24, 2023 Mem. and Ord., Doc. 41.
[7]   Centre Cnty. Mot. to Dismiss ("MTD") FAC, Doc. 46; Commw., PSP, and Brown MTD FAC, Doc. 55.
[8]   Oct. 2, 2023 Ord., Doc. 66.
[9]   Second Am. Compl. ("SAC"), Doc. 73.
[10]  *Id.* ¶¶ 4-12.

Defendants have filed Motions to Dismiss, which are now fully briefed and ripe for disposition.[11]

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal for "failure to state a claim upon which relief can be granted." The United States Court of Appeals for the Third Circuit has instructed that, under the standard established by the Supreme Court of the United States in *Bell Atlantic Corp. v. Twombly*[12] and *Ashcroft v. Iqbal*,[13] a court reviewing the sufficiency of a pleading must take three steps: (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they give rise to an entitlement to relief."[14]

---

[11]    Centre Cnty. MTD SAC, Doc. 82; Centre Cnty. Br. Supp. MTD, Doc. 83; Morgan Opp'n. Cnty. MTD, Doc. 91; Cnty. Reply Br., Doc. 99; Brown MTD SAC, Doc. 90; Brown Br. Supp. MTD, Doc. 93; Morgan Opp'n. Brown MTD, Doc. 103; Brown MTD Reply Br., Doc. 108; Cantorna and Smith MTD SAC (the "DA MTD"), Doc. 95; DA Br. Supp. MTD, Doc. 96; Morgan Opp'n. DA MTD, Doc. 104; DA MTD Reply. Br., Doc, 107; Nelson and STPD MTD SAC, Doc. 97; STPD Br. Supp. MTD, Doc. 98; Morgan Opp'n. STPD MTD, Doc. 105; STPD MTD Reply Br., Doc. 106.
The Court notes that Morgan filed identical oppositions to Brown's, the District Attorneys', and the Spring Township Motions. *Compare* Docs. 103-105. *See also infra* Section IV.A. For ease of discussion, the Court will cite to only Document 103.
[12]    550 U.S. 544 (2007).
[13]    556 U.S. 662 (2009).
[14]    *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

## III.   FACTUAL BACKGROUND[15]

On January 2, 2019, Sherica Chambers, a resident of New York, rented a gray 2018 Volkswagen Passat bearing Pennsylvania license plate KRS2315 at John F. Kennedy International Airport.[16] Two days later, a Pennsylvania State Police Officer conducted a traffic stop of the Passat, which was being driven by Horace Henry, also known as "Metro."[17] Henry presented a drivers license with his picture, but Morgan's identifying information.[18] The officer issued Henry a citation for traffic violations, and allowed him to leave.[19]

The license bearing Henry's picture and Morgan's identifying information was an element of a larger identity theft enterprise operated by Chambers, Henry, Ian Thompson, and Andrew Herdsman.[20] They would create fraudulent cell phone accounts with identities stolen from Centre County residents.[21] They would then use the accounts to order multiple cell phones, which would be delivered to the residences of the identity theft victims.[22] Once the phones were delivered, Henry and his compatriots would intercept the packages by presenting the delivery person with

---

[15]   The Court accepts as true the well-pleaded allegations of the Second Amended Complaint. *Supra* Section II.

[16]   SAC ¶ 71.

[17]   *Id.* ¶¶ 18, 26.

[18]   *Id.* ¶ 18.

[19]   *Id.*

[20]   *See generally* Aff. of Probable Cause, SAC Exh. 1, Doc. 73-1.

[21]   *Id.* at 5.

[22]   *Id.*

fraudulent identification bearing the stolen identity, or simply picking the packages up from the residence after they had been delivered.[23]

Apparently as part of the investigation into the identity theft operation, law enforcement was conducting surveillance of the Volkswagen on January 24, 2019.[24] The Volkswagen, occupied by Henry and Herdsman, was parked in front of a home in Spring Mills, Centre County, Pennsylvania where the pair waited for a delivery of illegally purchased cell phones.[25] At about 2:00 p.m., upon delivery by FedEx, Herdsman exited the Volkswagen to retrieve the package.[26] Defendant Michael Brown and Corporal Thomas Stock pursued and arrested Herdsman.[27] Meanwhile, Henry fled the scene behind the wheel of the Volkswagen.[28] Upon arresting Herdsman, police recovered a bag in the area containing a number of fraudulently purchased iPhones and an iPad.[29] Forensic examination of the iPad revealed pictures and other information identifying Henry.[30]

---

[23] *Id.*

[24] SAC ¶ 21. Absent from the record is any explanation for how the investigation into the identity theft operation led to the surveillance of the Volkswagen on January 24. Presumably, law enforcement had identified Chambers as a suspect and subsequently learned that she had rented the Volkswagen, which had been detected by license plate readers in the areas of homes where illegally purchased phones had been delivered. Aff. 7.

[25] SAC ¶¶ 21-22.

[26] *Id.* ¶ 23.

[27] *Id.* ¶ 24.

[28] *Id.*

[29] *Id.* ¶ 25.

[30] *Id.* ¶ 26.

Meanwhile, Chambers waited outside of a home in Patton Township, Centre County from about 1:45 p.m. to 2:20 p.m.[31] Half an hour after Chambers left, FedEx delivered a package containing two cell phones to that residence.[32]

The next day, Brown and an FBI agent interviewed Herdsman at the PSP Rockview Barracks.[33] During the interview, Herdsman confirmed that Henry, who he knew only as Metro, was driving the Volkswagen.[34] However, there is no record that law enforcement took any additional steps to confirm Metro's identity.[35] Herdsman also identified Chambers, who Henry called "Reeks" or "Rika," and related that she drove a black car with New Jersey license plates.[36] During an interview with Brown and Defendant Luke Nelson on January 28, 2019, Herdsman said that he had overheard Henry tell Chambers to extend the rental agreement on the Volkswagen.[37] Chambers had returned the Volkswagen to Avis on January 26, 2019.[38]

Based on the strength of Herdsman's identification of the driver of the Volkswagen as Metro, and the fact that Morgan had been identified, erroneously, as the driver of the Volkswagen on January 4, Brown applied for an arrest warrant for

---

[31] *Id.* ¶ 27.
[32] *Id.* ¶ 27.
[33] *Id.* ¶ 28.
[34] *Id.*
[35] *Id.*
[36] Aff. 8.
[37] *Id.*
[38] SAC ¶ 29.

Morgan.[39] On February 1, 2019, A Centre County magisterial district judge signed the warrant, which had been drafted with the assistance of and approved by Bernie Cantorna and Mark Smith.[40]

Even though the Defendants had in their possession surveillance footage, photographs, and other information identifying Henry, no additional steps were taken to confirm the identity of Metro.[41] Had such attempts been made, it would have been readily apparent that Morgan was not Metro; Morgan is a 6' 1", 220-pound, dark-skinned, black male, whereas Henry is a 5' 3", 150-pound, light-skinned, black male.[42]

Early in the morning of March 5, 2019, Detective Michael Langellotti of the New York Police Department, at Defendants' request, arrested Morgan at his home.[43] Langellotti confirmed Morgan's identity via his "pedigree information and a photograph" provided by Centre County.[44] Morgan, a lawful permanent resident who migrated from the West Indies, possessed a valid driver's license issued by the State of New York.[45] Accordingly, multiple state and federal agencies possessed records, including photographs, which could have been, and presumably were, used

---

[39] *See generally* Aff.
[40] *Id.*; SAC ¶ 37.
[41] SAC ¶¶ 38-43.
[42] *Id.* ¶ 47.
[43] *Id.* ¶ 51.
[44] Langellotti Aff., SAC Exh. 4, Doc. 73-4.
[45] SAC ¶ 55.

to identify Morgan.[46] Nevertheless, Defendants "confirmed" that Morgan was Metro. Morgan was detained in a Bronx correctional facility for nine days.[47]

On March 26, 2019, Brown emailed the Queens County District Attorney's Office indicating that further "investigation has led to the withdrawal of all charges against Mr. Dale Morgan."[48]

## IV.   ANALYSIS

### A.   Local Rule 7.8(a)

"A brief may address only one motion, except in the case of cross motions for summary judgment."[49] Here, Morgan filed a single brief opposing the Motions of Brown, the District Attorneys, and STPD.[50] Following an instruction to refile his oppositions in compliance with Rule 7.8(a), Morgan refiled the three copies of the same brief.[51] The District Attorneys argue that Morgan's opposition should be stricken for failure to comply with Rule 7.8 and the Court's instruction, rendering the Motions unopposed.[52]

---

[46] *Id.*
[47] *Id.* ¶ 61.
[48] *Id.* ¶ 65.
[49] LR 7.8(a).
[50] *Supra* n.11.
[51] *Id.*
[52] Doc. 107, Section II.C.

Courts "have discretion to depart from our local rules" and such departure is appropriate where no party has "suffered any unfair prejudice from the violations."[53] Though responding to three separate motions with a single brief may be inadvisable, this is not a case with wildly divergent legal standards or issues such that Morgan's omnibus opposition will have a material impact on the "expediency and efficiency [of] the litigation process."[54] Accordingly, striking Morgan's opposition, rendering the three relevant Motions to Dismiss unopposed, is too harsh a sanction.[55]

Nevertheless, the Court takes this opportunity to note that Morgan has, from the beginning of this litigation, struggled to comply with the rules and Orders of both this Court, and the Eastern District of New York. First, Morgan was required to show cause why the case should not be dismissed for failure to timely effect service as required by the Federal Rules of Civil Procedure.[56] Subsequently, despite the Court granting an extension, Morgan was again required to show cause for his continued failure to effect service.[57] Only then, six months after the filing of his Complaint, did

---

[53] *McSparran v. Commonwealth of Pennsylvania*, No. 1:13-CV-1932, 2017 WL 758283, at *2 (M.D. Pa. Feb. 24, 2017) (citing *Veverka v. Royal Caribbean Cruises Ltd.*, 649 Fed. Appx. 162, 167 (3d Cir. 2016); *United States v. Eleven Vehicles*, 200 F.3d 203, 215 (3d Cir. 2000)).

[54] *Cf. Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, No. CV 3:13-2827, 2018 WL 2091622, *1-2 (M.D. Pa. May 1, 2018) (denying request to address multiple motions in one brief where "applicable legal standards . . . diverge[d] wildly").

[55] *See Williams v. Pennsylvania State Univ.*, No. 4:20-CV-00298, --- F. Supp. ----, 2023 WL 6626789, at *4 (M.D. Pa. Oct. 11, 2023) (denying request to strike procedurally improper counterstatement of facts as "too harsh a sanction" where it would result in waiver of opportunity to defend claims and there was little "material difference in the expedience" with which Court was able to evaluate parties' filings).

[56] Docs. 6-7.

[57] Feb. 8, 2022 Docket Entry.

Morgan perfect service. Morgan then failed to comply, despite a docketed notice from the Court,[58] with the Eastern District of New York's local rule requiring parties to file responses to all requests for pre-motion conferences.[59]

Upon transfer of the matter to this Court, Morgan has continued to repeatedly violate Court rules.[60] To be sure, these violations are of the sort that, unfortunately, plague every case, and ultimately only prejudice the Court staff who must deal with them.[61] However, Morgan, specifically Morgan's counsel, is cautioned that litigants are not always immune to the effects of their procedural violations.[62] Therefore, Morgan's counsel is explicitly directed to read Chapters I-IV of this Court's Local Rules in their entirety prior to submitting any further filings with this Court.[63] To the extent that counsel remains unsure of how to proceed with future filings, she shall contact the Court and request guidance.

---

[58]   Mar. 10, 2022 Docket Entry.

[59]   Mar. 19, 2022 Ord.

[60]   June 21, 2023 Docket Entry; June 23, 2023 Docket Entry; Oct. 11, 2023 Docket Entry; Nov. 7, 2023 Docket Entry; Mar. 19, 2024 Docket Entry. Morgan also failed to file a redline version of his Second Amended Complaint as required by Local Rule 15.1(b).

[61]   Even Morgan's adversaries have run afoul of the Court's rules. *E.g.*, Feb. 2, 2024 Docket Entry. Fortunately, the Court staff are exceptional and able to keep things moving along efficiently, often in spite of the best efforts of the litigants before it.

[62]   *See, e.g.*, *Lauchle v. United Parcel Serv.*, No. 4:22-CV-00533, 2024 WL 643293, at *5, *7-8 (M.D. Pa. Feb. 15, 2024) (observing that a failure to comply with Local Rule 56.1 "effectively resulted in the forfeiture of [plaintiff's] claims").

[63]   The Court's Local Rules are available at https://www.pamd.uscourts.gov/sites/pamd/files/LR120114.pdf

### B.      Timeliness

The District Attorneys, STPD and Nelson, and Brown all argue that Morgan's claims should be dismissed as time-barred by the Pennsylvania statute of limitations.[64] Morgan suggests his claims are timely under New York law.[65] STPD and Nelson argue that Morgan's claims are time-barred, even if New York law applies.[66] The District Attorneys suggest that Morgan's "relation-back argument premised upon a patently inapplicable state court procedural rule should be summarily rejected."[67] Brown does not address the issue in his Reply.[68]

### 1.      Statute of Limitations

According to Brown, because the matter was transferred to the Middle District of Pennsylvania, "[c]learly Pennsylvania law applies to this litigation."[69] The application of Pennsylvania law is apparently so obvious to Brown that he did not see the need to cite an authority in support or address the issue at all in his Reply brief.[70] Morgan suggests that, following a transfer of venue, it is the law of the

---

[64]   Doc. 93, Section I; Doc. 95, Section III.A; Doc. 98, Section V.B.
[65]   Doc. 103, at 6.
[66]   Doc. 106, Section I.
[67]   Doc. 107, at 3.
[68]   *See generally* Doc. 108.
[69]   Doc. 93, at 7; *see also id.* at 6 n.22 ("The parties have correctly assumed and applied Pennsylvania law to this case since the transfer occurred.").
[70]   *Cf.* Orin S. Kerr, *A Theory of Law,* 16 Green Bag 2d 111 (2012) (observing the quandary of supporting such obvious claims with legal citations). Despite the obviousness of the issue, Brown also did not argue that the claims were time-barred in his prior motion to dismiss. *See generally* Doc. 56.

transferor court which controls.[71] STPD argues that Morgan's cited authority is inapposite and applies only in diversity suits. Whether to apply the law of the transferor or transferee court in suits arising out of federal law is, according to STPD, "a very thorny issue" on which there is disagreement among the United States Courts of Appeals. Thus, three parties to have addressed the issue have presented three different legal theories.

The Court opts for a fourth approach. In *Wallace v. Kato*, the United States Supreme Court held that, in § 1983 cases, courts are to apply the statute of limitations "of the state in which the cause of action arose."[72] The Third Circuit has since reiterated and relied upon that formulation.[73] Nevertheless, some Courts have continued to hold that the statute of limitations for a § 1983 case is taken from the forum state's personal injury statute, which is the crux of the divergent arguments of Morgan and STPD.[74] However, absent any binding precedent to the contrary, this Court "must conclude that the Supreme Court meant what it said in *Wallace v. Kato*."[75] The question then is whether Morgan's claims arose in Pennsylvania, where

---

[71] Doc. 5-6.

[72] 549 U.S. 384, 387 (2007).

[73] *Aleynikov v. McSwain*, No. 15 1170 (KM), 2016 WL 3398581, *5 (D.N.J. June 15, 2016) (citing *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 602 (3d Cir. 2015); *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 859 (3d Cir. 2014); *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009)); *accord Moore v. Walton*, 96 F.4th 616, 623 (3d Cir. 2024). The District Attorneys quote the correct language from *Kach* but fail to address the issue of where the claims arose. Doc. 95, at 8.

[74] *Aleynikov*, 2016 WL 3398581, at *5-6.

[75] *Id.* at *7.

Brown conducted his investigation and applied for the initial arrest warrant, or New York, where Detective Langellotti arrested Morgan at Brown's request, and where he was subsequently detained.

Defendants agree that Morgan's false arrest and imprisonment claim "accrued on March 5, 2019 when he appeared before the arraignment judge in Queens County."[76] Thus, it follows that his claim "arose" in New York, and that New York's three year statute of limitations applies.

Morgan's malicious prosecution claim presents a closer question. A malicious prosecution claim arises with the termination of the criminal case in the plaintiff's favor.[77] Brown emailed Langellotti on March 26, 2019 to inform him that the charges against Morgan had been withdrawn. The withdrawal of those charges must have occurred in Pennsylvania. While it may seem bizarre to Morgan that he would be subject to Pennsylvania law, despite having no connection to Pennsylvania and initially filing this suit in New York, the claim is for malicious prosecution, and Pennsylvania is where the proceeding occurred.[78]

---

[76] Doc. 93, at 7; *accord* Doc. 95, at 8-9. *Cf.* Doc. 98, at 4-5; Doc. 103, at 6 (STPD and Morgan do not distinguish between the false arrest and imprisonment and malicious prosecution claims for the purposes of the statute of limitations analysis, simply noting that the claims arose March 26, 2019 at the latest).

[77] *Aleynikov*, 2016 WL 3398581, at *8 (citing *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014); *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003)).

[78] *Id. See also* Restatement (Second) Conflict of Laws, § 155 (malicious prosecution claims governed by law of state where proceeding complained of occurred).

Morgan initiated this suit against Brown in August 2021 and added STPD and the District Attorneys as Defendants in December 2023. Therefore, Morgan's claims for false arrest and imprisonment against Brown are timely, whereas his malicious prosecution claims are barred by the applicable statute of limitations.

Brown's failure to raise the defense in his previous Motion to Dismiss, despite the "clear" application of Pennsylvania law, does not result in waiver as Morgan, having had an opportunity to respond to Defendants' arguments on the issue, is not unfairly prejudiced by Brown's belated raising of the defense.[79] Also, though Centre County did not raise the defense in any of its three motions to dismiss, *sua sponte* dismissal of the malicious prosecution, and derivative *Monell* claim, on statute of limitations grounds is appropriate as the defense and foregoing analysis applies with equal force to those claims.[80]

As to STPD and the District Attorneys, unless Morgan can show the claims against them relate back to those timely brought against others, all claims against those Defendants are untimely.

---

[79] *Klimowicz v. Unum Life Ins. Co. of Am.*, No. CIV.A. 04-2990 JAG, 2007 WL 2904195, at *6 (D.N.J. Sept. 28, 2007), *aff'd,* 296 F. App'x 248 (3d Cir. 2008) (citing *Balter v. United States,* 172 F. App'x 401, 403 (3d Cir. 2006); *Stafford v. E.I. Dupont de Nemours,* 27 F. App'x. 137, 140 (3d Cir. 2002)).

[80] *See McPherson v. U.S.*, 392 F. App'x. 938, 943 (3d. Cir. 2010) (holding that a court may *sua sponte* dismiss a claim "when the limitations defense is obvious from the face of the complaint").

## 2.     Relation Back

Federal Rule of Civil Procedure 15(c) provides the standard for the relation back doctrine, which "allows a court to treat a later-filed amended pleading as if it had been filed at the time of the initial pleading."[81] Rule 15 imposes three conditions which must be met for relation back of an amended complaint which names a new party: 1) the claim against the newly added defendant arises "out of the conduct, transaction, or occurrence set out . . . in the initial pleading";[82] 2) the newly named party "received such notice of the action that it will not be prejudiced in defending on the merits";[83] and 3) the newly named party must have or should have known that "but for a mistake" made by the plaintiff concerning the newly named party's identity, "the action would have been brought against" the newly named party in the first place.[84] "Critically, the second and third requirements must be satisfied 'within the period provided by Rule 4(m) for serving the summons and complaint.'"[85]

### a.   Notice and Rule 4(m) Period

Rule 4(m) provides that a plaintiff must serve a defendant within 90 days after a complaint is filed or, if the plaintiff demonstrates good cause for a failure to do so,

---

[81]  *Moore*, 96 F.4th at 623 (quoting *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 344 (3d Cir. 2021)).

[82]  Fed. R. Civ. P. 15(c)(1)(B).

[83]  Fed. R. Civ. P. 15(c)(1)(C)(i).

[84]  Fed. R. Civ. P. (c)(1)(C)(ii). *See also Moore*, 2024 WL 1203885, at *4 (citing *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193-94 (3d Cir. 2001)).

[85]  *Moore*, 96 F.4th at 623 (quoting Fed. R. Civ. P. 15(c)(1)(C); citing *Urrutia v. Harrisburg Cnty. Police Dep't*, 91 F.3d 451, 458 & n.10 (3d Cir. 1996)).

the court must extend the time for service for an appropriate period. Morgan filed his initial complaint on August 13, 2021 and named STPD and the District Attorneys in his Second Amended Complaint on December 8, 2023, a mere 757 days after Rule 4(m)'s default 90-day service period. Accordingly, absent an extension, STPD and the District Attorneys have not received sufficient notice to warrant relation back.[86]

"The determination whether to extend time [under Rule 4(m) of the Federal Rules of Civil Procedure] involves a two-step inquiry. The district court first determines whether good cause exists for a plaintiff's failure to effect timely service. If good cause exists, the extension must be granted. If good cause does not exist, the district court must consider whether to grant a discretionary extension of time."[87] In conducting the good cause inquiry, the Court is not to consider the fact that, absent an extension, Morgan's claims will be barred by the statute of limitations.[88]

Morgan has presented no argument that good cause exists for his delay in naming STPD and the District Attorneys as Defendants. Rather, Morgan argues that his claims are timely under New York's relation back statute, C.P.L.R. § 203. Though § 203 may be applicable in federal court for determining whether a statute of limitations should be tolled,[89] relation back is governed by Rule 15, not state

---

[86]  *Id.*
[87]  *Davis v. Samuels*, 962 F.3d 105, 116 (3d Cir. 2020) (quoting *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997)).
[88]  *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1306 (3d Cir. 1995).
[89]  *Corcoran v. New York Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999).

law.[90] Nor is it apparent to the Court that Morgan's failure to timely name STPD and the District Attorneys is due to good cause rather than simple lack of diligence.

The Court then considers whether a discretionary extension is nevertheless appropriate. Here, the Court may consider that Morgan's claims would be barred by the statute of limitations absent an extension.[91] In such cases, the Third Circuit has intimated courts should freely grant discretionary extensions where the failure to make timely service does not otherwise prejudice the defendant.[92]

On this point, Defendants have made no such argument. Instead, they merely reference Rule 4(m)'s default 90-day service period, failing to conduct the rest of the Rule 15 analysis as required by Third Circuit precedent.[93] Because Morgan would plainly be prejudiced absent an extension, and there is nothing in the record to suggest that Defendants would be, the Court finds that Morgan's Second Amended Complaint provided timely notice as required by Rule 15(c)(1)(C)(i).[94]

---

[90] *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 2436, 2015 WL 7075812, at *9 n.37 (E.D. Pa. Nov. 13, 2015) (citing *Loudenslager v. Teeple*, 466 F.2d 249, 250 (3d Cir. 1972)).

[91] *Boley*, 123 F. 3d at 758 (citing Fed. R. Civ. P. 4(m) Adv. Comm. Notes (1993)).

[92] *Id.* at 758-59.

[93] Doc. 106, at 6; Doc. 107, at 5.

[94] *Cf. Boley*, 123 F.3d at 759 (noting that defendants may be prejudiced due to, for example, the loss of evidence, unavailability of witnesses, or increased potential for fraud or collusion); *Moore*, 96 F.4th at 623-24 (extension granted where amendment occurred 924 days outside of default period).

### b.    Mistake

Relation back therefore turns on the third prong: whether STPD and the District Attorneys must have known, or should have known, "that 'but for a mistake' made by the plaintiff concerning the newly named party's identity, 'the action would have been brought against' the newly named party in the first place."[95] The relevant inquiry is "what the prospective defendant knew or should have known during the Rule 4(m) period, not what the plaintiff knew or should have known at the time of filing [his] original complaint."[96] "A 'mistake' is no less a 'mistake' when it flows from lack of knowledge as opposed to inaccurate description."[97]

As to the District Attorneys, in the section of the First Amended Complaint identifying the parties, Morgan alleges that "Defendant Centre County employs the individuals who work on its behalf at . . . the Centre County District Attorney's Office. At all times relevant, the Centre County employees were acting within the scope of their employment and under the color of state law."[98] The only allegation of the First Amended Complaint's "Statement of Facts" which conceivably relates to the conduct of the District Attorneys is Morgan's suggestion that "defendant Centre County, using interstate communications, repeatedly sent various interstate

---

[95]   *Singletary*, 266 F.3d at 194 (quoting Fed. R. Civ. P. 15(c)(3)(B)). The foregoing notice inquiry applies with equal force to the third prong of the Rule 15 analysis.

[96]   *Browning v. Safmarine, Inc.*, 287 F.R.D. 288, 292 (D.N.J. 2012) (quoting *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010)).

[97]   *Arthur v. Maersk, Inc.,* 434 F.3d 196, 208 (3d Cir.2006).

[98]   FAC ¶ 9.

communications containing instructions to members of the Queens County District Attorney's Office who acted as the agents of the defendant who in turn transacted the prosecutorial activities/duties for and on behalf of the defendant."[99] This is woefully insufficient to put the District Attorneys on notice that, but for Morgan's mistake, they would have been named in the Complaint. Even if the Court assumes otherwise, the relevant allegations mention only "prosecutorial activities," and Morgan's malicious prosecution claims are untimely as to all Defendants.

As to STPD, Morgan alleged in the First Amended Complaint that "Officer Luke Nelson of the Spring Township Police Department, (defendant John Doe) an employee of defendant Centre County acting with[in] the scope of his employment, along with defendant Michael Brown interviewed Mr. Herdsman."[100] Therefore, it appears that Morgan *did* name Officer Nelson in the First Amended Complaint.[101] It is unclear why Morgan named Nelson as a John Doe despite identifying him in the body of the Complaint, but it appears to be just the sort of "mistake" for which Rule 15 provides a remedy.[102] The same is true of the Police Department itself. In his First Amended Complaint, Morgan, albeit incorrectly, pleads that the Spring Township

---

[99]  *Id.* ¶ 37.
[100]  *Id.* ¶ 17.
[101]  Doc. 103, at 8.
[102]  *See Arthur*, 434 F.3d at 209 (mistake may be based on lack of knowledge or mere misnomer).

Police Department is a law enforcement agency of Centre County.[103] Thus, his failure to name the Department itself is attributable to a similar mistake.

Accordingly, Morgan's claims against the District Attorneys fail to relate back and will therefore be dismissed as untimely. Conversely, relation back is appropriate as to Morgan's claims against STPD.

### C.   False Arrest and Imprisonment

"To bring a claim for false arrest, a plaintiff must establish '(1) that there was an arrest; and (2) that the arrest was made without probable cause.'"[104] "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."[105] "To state a claim for false imprisonment, a plaintiff must establish: (1) that [he] was detained; and (2) that the detention was unlawful."[106] As to the first prongs, an individual may be held liable when their "intentional actions set forth the arresting officer in motion."[107] The inquiry under the second prong, whether the arrest and

---

[103]  *E.g.*, FAC ¶¶ 9-10, 16-17.

[104]  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)).

[105]  *Id.* at 202 (quoting *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).

[106]  *Id.* (quoting *James*, 700 F.3d at 682-83).

[107]  *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000). *See also Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (filing affidavit of probable cause with false statement or omission can support false arrest claim); *Diaz v. Carstaphen*, No. 22-CV-7465 (RBK/SAK), 2023 WL 4702193, at *4 (D.N.J. July 24, 2023)).

subsequent detention were supported by probable cause, are "largely the same" for both false arrest and imprisonment claims.[108]

### 1.    Officer Brown

Previously, the Court granted Brown's Motion to Dismiss the First Amended Complaint on the grounds that Brown's reliance on the probable cause determination of the magistrate who issued the warrant was objectively reasonable, and that the Complaint was devoid of any allegations that Brown unreasonably failed to verify Morgan's identity.[109] The Second Amended Complaint fails to remedy this deficiency.

Detective Langellotti, in his affidavit in support of his request for an arrest warrant, stated that "Defendant's identification has been confirmed by the Defendant's pedigree information and a photograph of the Defendant provided by [Pennsylvania]."[110] Thus, it follows that Brown, who made the request of Langellotti, had in his possession a true, and correct photograph of Morgan. However, the Complaint is devoid of any allegation that Brown himself had anything to compare the photograph to. He never personally saw Metro, nor did any of the surveillance videos which Brown described in his own affidavit show Henry getting out of the Volkswagen. There is no indication that Brown knew Henry stayed at a

---

[108] *Id.*
[109] *Id.* at 19-21.
[110] SAC ¶ 57.

motel in State College between the date of the traffic stop and Herdsman's arrest, or of the iPad with Henry's identifying information.

Regarding Brown's affidavit, as before, the fact that a neutral magistrate approved the warrant, despite Brown not describing any steps he took to compare the appearance of Morgan to Metro in his affidavit, renders Brown's reliance on that warrant "objectively reasonable" under binding Supreme Court precedent.[111] Therefore, Brown can only be liable if, in drafting the affidavit, he "made statements or omissions that he 'knew were false, or would have known were false except for his reckless disregard for the truth.'"[112] But, absent from the Second Amended Complaint is any allegation that Brown himself knew or should have known that Morgan was not Metro.

Put differently, it is insufficient for Morgan to show that Brown *could* have, with additional investigation, known that Morgan was not Metro.[113] And, even if the Court agrees that there was not probable cause, and that Brown *should* have undertaken such additional steps, such as confirming Metro's appearance with Herdsman or reviewing additional evidence in the possession of law enforcement, that the magistrate who approved the warrant did not think additional investigative

---

[111] *Messerschmidt v. Millender*, 565 U.S. 535, 546-57 (2012).

[112] *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (quoting *United States v. Leon,* 468 U.S. 897, 923 (1984)).

[113] *See Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020) (citing *Geness v. Cox*, 902 F.3d 344, 354 n.5 (3d Cir. 2018)) (observing that the Third Circuit has avoided determining whether there is a "right to be free from a reckless investigation").

steps were necessary for probable cause is determinative here. That is because the question is whether *Brown* should he held liable for effecting the arrest and detention of Morgan; the law is clear that, absent *knowing* falsity on his part, where his finding of probable cause, even if erroneous, was ratified by a magistrate, he is entitled to rely on it.[114]

### 2.    Officer Nelson

The only allegations specifically attributed to Nelson in the Second Amended Complaint are that he participated in the January 28, 2019 interview of Herdsman.[115] Beyond that, Morgan repeatedly mentions Nelson together with Brown, Cantorna, and Smith.[116] These allegations are no more than "impermissibly vague group pleading."[117] Tellingly, aside from his argument regarding the timeliness of his claims, Morgan's opposition is devoid of any defense of his claims against Nelson on the merits.[118] In all events, the sum of the allegations of the Second Amended Complaint are insufficient to state a claim against Nelson.

### 3.    Centre County and Spring Township

As the Court noted in its prior Memorandum Opinion, "[*r*]*espondeat superior* liability is unavailable against municipal bodies under § 1983."[119] Morgan now

---

[114] *Wilson*, 212 F.3d at 787.

[115] SAC ¶ 30.

[116] *E.g.*, ¶¶ 43-46, 49, 57, 62-63.

[117] *Falat v. Cnty of Hunterdon*, No. 12-6804, 2013 WL 1163751 at *3 (D.N.J. Mar. 19, 2013).

[118] *See generally* Doc. 103.

[119] Doc. 65, at 12 (citing *Monell v. New York City Dep't of Social Servs*, 436 U.S. 658, 691 (1978)).

argues that his claims against Centre County should be allowed to proceed under New York state law, which provides for *respondeat superior* liability for false arrest and imprisonment.[120] Illustrating the perils of filing a single opposition to three separate motions to dismiss, Morgan offers no such argument as to Spring Township Police Department, who accordingly does not address the issue in its Reply.[121] Centre County notes that, under Pennsylvania law, it is statutorily immune from such claims.[122]

Whether Centre County or Spring Township could be held liable for false arrest and imprisonment under New York law, where Morgan was arrested and imprisoned, presents an interesting question. Though the Court would take some pleasure in exploring the issue, it need not answer that question because Morgan's articulation of a new theory of liability in his brief is an impermissible attempt to amend his complaint in his opposition to a motion to dismiss.[123] In each of his Complaints, Morgan asserts jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343, rather than 28 U.S.C. § 1332 as would be appropriate for claims brought under state law.[124] Similarly, his false arrest and imprisonment claims are pleaded as

---

[120] Doc. 91, at 12 (citing *Anderson v. City of New York*, 817 F. Supp. 2d 77, 98-99 (E.D.N.Y. 2011).

[121] *See generally* Doc. 103.

[122] Doc. 99, Section II.A.

[123] *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 387 (D.N.J. 2019) (citing *Carpenters Health 86 Welfare Fund of Phila. & Vicinity v. Mgmt. Res. Sys.*, 837 F.3d 378, 383 (3d Cir. 2016); *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007)).

[124] Compl. ¶¶ 1, 3; FAC ¶¶ 1, 3; SAC ¶¶ 1-3.

constitutional violations in each Complaint, rather than common law torts.[125] The Court evaluates the claims as pleaded and dismisses them accordingly.

### 4.    John Doe Defendants

In his Second Amended Complaint, Morgan names Pennsylvania State Police Officer John Doe and Centre County Prosecutor John Doe, Esq.[126] Despite moving to dismiss the claims against Brown, the Commonwealth of Pennsylvania has apparently not seen fit to challenge the claims against his unidentified colleague. So too of Centre County, who has challenged only the claims against Cantorna and Smith. Nevertheless, the claims against the John Doe Defendants fail for the same reasons as those against their identified colleagues. There are no allegations that any particular, unidentified, Pennsylvania State Police Officer took any actions which would be sufficient to state a claim for false arrest and imprisonment. No Centre County prosecutor, identified or otherwise, would have had any reason to believe that they would have been named in the suit but for a mistake by Morgan. Accordingly, *sua sponte* dismissal of the claims against the John Doe Defendants is appropriate.[127]

---

[125]   Compl., Count I; FAC, Count I; SAC, Count I.

[126]   SAC ¶ 12.

[127]   *See Silverstein v. Percudani*, 422 F. Supp. 2d 468, 473 (M.D. Pa. 2006), *aff'd,* 207 F. App'x 238 (3d Cir. 2006) (dismissing claims against non-moving defendant *sua sponte* where reasoning of motions to dismiss filed by other defendants applied with equal force).

### D.   *Monell*

The Supreme Court held in *Monell v. Department of Social Services of City of New York* that a governmental entity may be held liable under Section 1983 "when execution of a government's policy or custom" results in a constitutional injury inflicted by its employees or agents.[128] The Third Circuit has "reiterated [that] a § 1983 claim against a municipality may proceed in two ways: (1) A plaintiff may put forth an unconstitutional policy or custom of the municipality that led to his or her injuries; or (2) that [the injuries] were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."[129] A plaintiff complaining of an unconstitutional policy or custom must point to an official policy established by a decisionmaker with the authority to do so or a course of conduct so well-settled and permanent as to virtually constitute law.[130] Alternatively, a plaintiff proceeding under the latter theory "has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality."[131]

---

[128]  436 U.S. 658, 694 (1978).

[129]  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019); *Monell*, 436 U.S. at 694; *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)) (internal citations and quotations removed, punctuation modified, and numbering added).

[130]  *Id.* at 105-106 (citing *Roman*, 914 F.3d at 798; *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)).

[131]  *Id.* at 106 (citing *Roman*, 914 F.3d at 798).

Ordinarily, to establish deliberate indifference on the part of a governmental entity a plaintiff must show that the entity had been put on notice of its failure by a pattern of prior constitutional violations.[132] "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a course of action that will cause violations of constitutional rights."[133] In "single-incident" cases—cases without evidence of prior constitutional violations—a plaintiff faces a high burden to show that the suffered violation was a highly predictable consequence of a situation that policy makers "know to a moral certainty" that is likely to occur.[134] "Liability in single-incident cases depends on 'the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.'"[135]

A *Monell* defendant may be held liable even where its officers are not unless such a finding would create an inconsistent ruling.[136] Situations where the *Monell* defendant may cause constitutional harm without any individual defendant violating the plaintiff's rights include those "where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting

---

[132] *Thomas v. Cumberland County*, 749 F.3d 217, 223 (3d Cir. 2014) (citing *Connick v. Thompson,* 563 U.S. 51, 62 (2011)).

[133] *Id.* (quoting *Connick*, 563 U.S. at 62).

[134] *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10); *accord Natale*, 318 F.3d at 584-85.

[135] *Id.* at 223-224 (quoting *Bryan Cnty*, 520 U.S. at 409).

[136] *Mervilus v. Union County*, 73 F.4th 185, 196 (3d Cir. 2023) (citing *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010)).

municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation."[137]

As above, that the warrant was approved by the magistrate precludes Morgan's claims as to any constitutionally deficient policies of Centre County or Spring Township Police Department. The determination of the magistrate that there was probable cause to issue the warrant means that Morgan's false arrest and imprisonment claims fail at the second prong—neither was unlawful. As there was no underlying constitutional violation, the claims against Centre County and the Police Department also necessarily fail.[138] Even if the Court were to assume that Brown's affidavit included statements made with a reckless disregard for the truth, there is no indication that it was the result of any Centre County or Spring Township policy. Not only is there no allegation of such a policy, Brown is an officer of the Pennsylvania State Police, which is an entity separate from either Defendant.

## V.    CONCLUSION

After over two-and-a-half years and three attempts, Morgan has failed to state a claim arising out of events which occurred five years ago. Ordinarily, dismissal at this juncture would be with prejudice. However, the path this case has taken to get to this point is far from ordinary. The case was transferred to this Court after pending in the Eastern District of New York for over a year-and-a-half. Six months later,

---

[137] *Id.* (quoting *Speer v. City of Wynne*, 276 F.3d 980, 985–86 (8th Cir. 2002)).
[138] *Stephens v. City of Englewood*, 689 F. App'x 710, 714 (3d Cir. 2017).

Morgan amended his Complaint to add new parties, over two years after he initiated the case and four-and-a-half years after the complained of conduct. Nor has the briefing of the parties been of the sort which would ordinarily help to clarify the issues through three rounds of motions to dismiss; however "difficult to follow" Defendants find Morgan's allegations,[139] the parties' collective briefing is no less straightforward.[140]

Though Morgan has not requested leave to amend, it is well settled in this circuit that such leave should be "freely granted."[141] Such leave is appropriate here, where it is uncontroverted that Morgan suffered an injury and the course of proceedings have precluded a real testing of Morgan's claims on the merits.

Of course, that Morgan suffered an injury does not, on its own, entitle him to relief. Certain of Morgan's claims are fatally flawed such that amendment would be futile. Count III is dismissed with prejudice against all Defendants as barred by the applicable statute of limitations. As is Count I against Defendants Bernie Cantorna, Mark Smith, and the unidentified John Doe prosecutor.

Counts I and II are dismissed against all other Defendants without prejudice. Morgan may amend his Complaint as to those claims a third, and likely final, time

---

[139] *Cf.* Doc. 95 ¶ 11.

[140] *See supra* Section V.B.1 (noting that none of the three motions which raised a statute of limitations defense nor Morgan's opposition applied the correct standard); Section V.B.2.a. (noting neither motion which argued Morgan's claims did not relate back addressed whether an extension to the default 90-day Rule 4(m) period was warranted).

[141] *Humphries v. Pa. State Univ.*, 492 F. Supp. 3d 393, 411 (M.D. Pa. 2020).

within 21 days of the Court's Memorandum Opinion and Order. As to Count I, Morgan may amend his Complaint if he is able to allege facts sufficient to show that Defendants knew that either of the two arrest warrants were supported by an affidavit which the Defendants knew were false or recklessly disregarded information which the Defendants knew to be in their possession. He may also amend his Complaint as to Count II if he can show the above, and that Defendants were aware of the risk of the constitutional violation at issue.

Morgan is advised not to attempt to stave off dismissal by simply creatively re-stating facts already alleged. Nor will conclusory allegations which merely recast the deficiencies identified by the Court herein as new facts.[142] If there are no new facts to be alleged, or existing facts that may be alleged more completely, amendment is discouraged.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[142] *See, e.g.*, *Benscoter v. Nationwide Mut. Ins. Co.*, No. 4:22-CV-01142, 2024 WL 115984, at *3 (M.D. Pa. Jan. 10, 2024) (granting dismissal where plaintiff merely included conclusory allegations mirroring Court's prior opinion).