# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DALE MORGAN,

        Plaintiff,

    v.

CENTRE COUNTY, PA,
MICHAEL D. BROWN, and
OFFICER JOHN DOE #1,

        Defendants.

No. 4:23-CV-00872

(Chief Judge Brann)

## MEMORANDUM OPINION

### SEPTEMBER 10, 2024

## I.  PROCEDURAL HISTORY

Plaintiff Dale Morgan initiated this § 1983 action in August 2021 with the filing of a Complaint in the United States District Court for the Eastern District of New York.[1] In his initial Complaint, Morgan named as Defendants the Commonwealth of Pennsylvania, Pennsylvania State Police, Centre County, Pennsylvania, several unidentified law enforcement officers, and Pennsylvania State Police Officer Michael D. Brown.[2] Morgan filed an Amended Complaint in November 2022,[3] which those Defendants moved to dismiss.[4] The Commonwealth,

---

[1]  Compl., Doc. 1.
[2]  *Id.*
[3]  First Am. Compl. ("FAC"), Doc. 28.
[4]  Commw. EDNY Mot. to Dismiss, Doc. 31; Centre Cnty. EDNY Mot. to Dismiss, Doc. 34.

PSP, and Brown also filed a motion to change venue.[5] The Honorable Eric R. Komitee granted the latter request, transferring the case to the Middle District of Pennsylvania, and denying the motions to dismiss without prejudice to renew before the transferee court.[6] Following transfer, Defendants did renew those motions,[7] which this Court granted against the Commonwealth and PSP with prejudice and with leave for Morgan to amend his claims against Brown and Centre County.[8]

Morgan filed a Second Amended Complaint on December 8, 2023.[9] In addition to Centre County and Brown, Morgan also named Centre County District Attorney Bernie Cantorna, Centre County prosecutor Mark Smith, Spring Township, Pennsylvania Police Department ("STPD"), Spring Township Police Officer Luke Nelson, an unidentified John Doe PSP officer, and an unidentified John Doe attorney with the Centre County District Attorney's Office.[10] Morgan asserted three claims for relief: False Arrest and Imprisonment in violation of the Fourth and Fifth Amendments against all Defendants (Count I); *Monell* claims against Centre County and Spring Township (Count II); and Malicious Prosecution against all Defendants (Count III). On April 18, 2024, the Court granted Defendants' Motions to Dismiss.[11]

---

[5]  Mot. to Transfer, Doc. 29.

[6]  May 24, 2023 Mem. and Ord., Doc. 41.

[7]  Centre Cnty. Mot. to Dismiss ("MTD") FAC, Doc. 46; Commw., PSP, and Brown MTD FAC, Doc. 55.

[8]  Oct. 2, 2023 Ord., Doc. 66.

[9]  Second Am. Compl. ("SAC"), Doc. 73.

[10]  *Id.* ¶¶ 4-12.

[11]  Apr. 18, 2024 Mem. Op. and Ord. ("MTD Op. and Ord."), Docs. 109-110.

The Court dismissed all claims against Cantorna, Smith, and John Doe, Esq. and Morgan's Count III malicious prosecution claims against all Defendants with prejudice as barred by the statute of limitations.[12] The balance of Morgan's claims were dismissed without prejudice.

On May 1, 2024, STPD and Nelson timely filed a Motion for Reconsideration, requesting that dismissal of the claims against them be with prejudice.[13] STPD and Nelson argued that the Court's relation back analysis under Federal Rule of Civil Procedure 15 was inconsistent with the recent decision of the United States Court of Appeals for the Third Circuit in *Moore v. Walton*.[14] Under Local Rule 7.6, Morgan's opposition was due on May 15, 2024. One day before that deadline, Morgan filed a consent Motion for a 45-day extension.[15] The Court granted that Motion, ordering Morgan to file his opposition on or before July 1, 2024.[16] Despite requesting, and receiving, a significant extension, Morgan failed to file an opposition and on July 3, 2024 the Court granted STPD's and Nelson's Motion as unopposed, dismissing the claims against them with prejudice.[17] The Court set a July 24, 2024 deadline for Morgan to amend his claims against the remaining Defendants.

---

[12]  *Id.*
[13]  Doc. 111.
[14]  96 F.4th 616 (3d Cir. 2024).
[15]  Doc. 115.
[16]  Doc. 116.
[17]  July 3, 2024 Ord., Doc. 117.

On July 23, 2024, Morgan filed a Third Amended Complaint.[18] Then, on July 31, 2024, Morgan filed a Motion for Reconsideration of or to Amend the Court's July 3 Order.[19] Morgan filed a brief in support on August 6, 2024.[20] That same day, the Court stayed the deadline for Defendants to respond to Morgan's Third Amended Complaint pending resolution of Morgan's Motion and set a briefing schedule on Morgan's Motion.[21] The relevant parties have timely filed those briefs;[22] Morgan's Motion is now ripe for disposition and, for the reasons below, it is denied.

## II.    RELEVANT BACKGROUND OF MORGAN'S MOTION

In their Motion to Dismiss the Second Amended Complaint, Defendants Cantorna and Smith argued that their Motion to Dismiss should be granted as unopposed due to Morgan's failure to comply with the Local Rules.[23] The Court noted that no party "suffered any unfair prejudice" from the relevant violation which had no "material impact on the 'expediency and efficiency of the litigation process,'" rendering striking Morgan's opposition too harsh a sanction.[24]

The Court did, however, "take the opportunity to note that Morgan had, from the beginning of this litigation, struggled to comply with the Rules and Orders of

---

[18]   Third Am. Compl., Doc. 118.
[19]   Doc. 119.
[20]   Doc. 121.
[21]   Doc. 123.
[22]   Opp'n, Doc. 124; Reply, Doc. 124.
[23]   MTD Op. Section IV.A.
[24]   *Id.* at 9 (quoting *McSparran v. Commonwealth of Pennsylvania*, No. 1:13-CV-1932, 2017 WL 758283, at *2 (M.D. Pa. Feb. 24, 2017); *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, No. CV 3:13-2827, 2018 WL 2091622, at *1-2 (M.D. Pa. May 1, 2018)).

both this Court, and the Eastern District of New York."[25] The Court then detailed Morgan's inability to follow Court Rules and Orders. In particular, the Court observed that this litigation, initiated in August 2021, had yet to progress pass the Motion to Dismiss stage due to Morgan's dilatory conduct, including his persistent failure to adhere to deadlines set forth by Rule and Court Order.[26] The Court concluded by cautioning Morgan that litigants are not always immune to the effects of their procedural violations and explicitly directed Morgan's counsel to read Chapters I-IV of the Court's Local Rules before submitting any further filings.[27]

### A.    Morgan's Past Noncompliance and Dilatoriness

As discussed above, the Court has detailed Morgan's, specifically his counsel's, failure to adhere to Court rules and deadlines on two prior occasions. Nevertheless, counsel maintains that their most recent failures were an aberration. Accordingly, for a third and final time, the Court will detail counsel's failures, and the impact those failures have had on this litigation.[28]

---

[25]  *Id.* (cleaned up).

[26]  *Id.* at 9-10.

[27]  *Id.* at 10. The Court later directed all counsel of record to do so. Doc. 113 ¶ 3.

[28]  It is not the Court's intention to embarrass counsel or pile on where counsel and her family has suffered genuine hardship. However, at this point the Court is at a loss as to how else to effectively communicate the point other than to painstakingly detail counsel's obdurate disregard for her obligations to date.

### 1.     Failure to Timely Effect Service

Morgan filed his original Complaint on August 13, 2021.[29] On December 15, 2021, Magistrate Judge Roanne L. Mann ordered Morgan to show cause why the case should not be dismissed for failure to timely effect service.[30] On December 16, 2021, Morgan represented to the Court that he had effected service that day.[31] Judge Mann, despite finding that Morgan had failed to demonstrate good cause for the belated service and noting that Morgan misapprehended the deadline for Rule 4(m)'s window for service, nevertheless extended the deadline for service *nunc pro tunc* to December 16, 2021.[32] Morgan's failure to timely effect service resulted in a delay of 36 days.

### 2.     Failure to Prosecute

On February 7, 2022, Judge Mann again ordered Morgan to show cause "why the complaint should not be dismissed based on his persistent lack of prosecution in this case."[33] The next day, Morgan filed documents which purported to be, but were not, returned summonses.[34] Looking past this deficiency and assuming that service was proper on December 16, the deadline for Defendants to respond to the

---

[29] Compl., Doc. 1. As an aside, the Court cannot help but wonder when Morgan engaged counsel to prosecute this matter on his behalf and whether certain of his claims which are time-barred might have otherwise been timely if counsel were more diligent.

[30] Doc. 6.

[31] Doc. 7.

[32] Dec. 17, 2021 Dkt. Entry.

[33] Feb. 7, 2022 Dkt. Entry.

[34] Docs. 12-13. *See also* Doc. 14 (Motion for Extension of time filed by Centre County noting that it was not served with a summons).

Complaint was January 6, 2022.[35] Morgan's failure to prosecute therefore resulted in an additional delay of 32 days, bringing the total to 68 days.

### 3. Failure to Respond to Requests for Pre-Motion Conference

On March 9 and 10, 2022, Defendants filed Letters Requesting Pre-Motion Conferences under Rule III.B.3 of Judge Komitee's Local Rules.[36] Morgan was required under Rule III.B.3 to respond within five days.[37] Instead, Morgan responded on March 24, 2022 after Judge Komitee noted his failure to timely respond.[38] This resulted in an additional delay of 14 days, bringing the total to 82 days.

### 4. Failure to Timely File Amended Complaint

On October 18, 2022, Judge Komitee granted Morgan leave to file an Amended Complaint by November 17, 2022.[39] After November 17 came and went without the filing of an Amended Complaint, Judge Komitee, on November 23, 2022, ordered Morgan to "immediately comply with the Court's October 18 order and file his amended complaint that was due on November 17, 2022."[40] Morgan filed his First Amended Complaint on November 28, 2022.[41] Morgan's failure to timely

---

[35] *See* Doc. 15 (letter from Pennsylvania Attorney General Office noting that the original date for Commonwealth Defendants to respond was January 6, 2022).
[36] Docs. 16-17.
[37] Mar. 10, 2022 Dkt. Entry.
[38] Mar. 19, 2022 Dkt. Entry; Doc. 18.
[39] Doc. 25.
[40] Nov. 23, 2022 Dkt. Entry.
[41] Doc. 27.

file his First Amended Complaint resulted in an additional delay of 11 days, bringing the total to 93 days.

### 5.    Morgan's Untimely Motion for Reconsideration

Morgan filed his Motion for Reconsideration of the Court's July 3, 2024 Order on July 31, 2024 and his brief in support on August 6, 2024, 20 days after such motions are required to be filed and briefed under Local Rule 7.10. The Court notes that Local Rule 7.10 does not apply to motions seeking relief under Federal Rule of Civil Procedure 59. In all events, Morgan's present Motion flows from his failure to timely oppose STPD and Nelson's Motion for Reconsideration, resulting in an additional delay of 50 days, bringing the total to 143 days.[42]

### 6.    Morgan's Requests for Extensions in MDPA

When Morgan has timely filed documents in this case, they have been motions for extensions of time. After the matter was transferred to this Court, Morgan filed, and was granted extensions to i) respond to Centre County's Motion to Dismiss the First Amended Complaint (32 days);[43] ii) respond to Commonwealth Defendants' Motion to Dismiss the First Amended Complaint (30 days);[44] iii) file a Second Amended Complaint (42 days);[45] iv) respond to Defendants' Motions to Dismiss the

---

[42]   Had Morgan timely opposed STPD's and Nelson's Motion, that Motion would have been ripe on July 15. Morgan's present Motion became ripe on September 3.
[43]   Docs. 50, 52-54.
[44]   Docs. 58, 59.
[45]   Docs. 67-71.

Second Amended Complaint (21 days,[46] 13 days,[47] and 27 days[48]); and vi) respond to STPD and Nelson's Motion for Reconsideration (45 days).[49]

To be sure, Morgan requested, and was granted each extension. So, none of the filings, save for his opposition to the Motion for Reconsideration, which was never filed, were untimely. However, in the Court's view, the requests for extensions provide context for the issue presented by Morgan's pending Motion. Looking only to the latest of the extended deadlines, Morgan's requested extensions resulted in an additional 144 days of delay.[50]

It also does not appear that Morgan made particularly good use of the extra time. For example, Morgan requested an additional 13 days to respond to Brown's Motion to Dismiss the Second Amended Complaint, moving the deadline to February 29, 2024.[51] Then, on February 20, 2024, Morgan requested an extension to respond to the Motions to Dismiss filed by other Defendants, moving the deadline for each of Morgan's oppositions owed to the Court to March 18, 2024.[52] On that deadline, Morgan filed a single brief which purported to address three separate Motions to Dismiss.[53]

---

[46] Docs. 84-85.
[47] Docs. 92, 94.
[48] Docs. 100-101.
[49] Docs. 115-116.
[50] Defendants responded to Morgan's Complaints on different timelines, thus resulting in overlapping deadlines.
[51] *Supra* n.47.
[52] *Supra* n.48.
[53] *Supra* n.23.

The result of Morgan's approach to this litigation is that a case which was filed three years ago has yet to progress past the Motion to Dismiss stage. The Court is unable to recall another case in which it has taken so long to accomplish so little.[54]

### B.    The Russell and Alter Declarations

Since this case's inception, Morgan has been represented by Camille O. Russell. When the matter was transferred to this Court, Bernard Mitchell Alter entered an appearance on Morgan's behalf.[55] Nevertheless, until the Court's July 3 Order, Russell had been the only counsel to submit any filing in this matter. After the July 3 Order in which this Court granted STPD's and Nelson's Motion for Reconsideration as unopposed, Alter filed the Third Amended Complaint and the instant Motion.

Attached to Morgan's pending Motion are declarations of Russell and Alter.[56] In her declaration, Russell attempts to explain her failure to oppose STPD's and Nelson's Motion for Reconsideration. Russell attests that her niece, of whom she is the legal guardian, attempted suicide in mid-June 2024.[57] Russell represents that she

---

[54]   To illustrate the point, several months ago the Court had a trial on a case of the same vintage as this one. *Holmes v. Am. Home Patient/Lincare*, No. 4:21-cv-01683 (M.D. Pa.). Last month, the Court issued a detailed Opinion and Order resolving several *Daubert* motions and a motion for summary judgment in a far more complex case which was initiated a few months before the current litigation. *Knight v. Avco Corp.*, No. 4:21-cv-00702 (M.D. Pa.). In November, the Court has a multi-week trial scheduled in a similarly complex case filed shortly before this one which also involved several *Daubert* challenges and a motion for summary judgment. *The Penn. State Univ. v. Vintage Brand, LLC*, No. 4:21-cv-01091 (M.D. Pa.).

[55]   Doc. 51.

[56]   Docs. 119-1, 119-2.

[57]   Doc. 119-2 ¶ 9.

was required to devote her time to caring for her niece from the end of June through the beginning of July while she recovered.[58]

Russell continues that "on July 1, 2024, [she] was the attorney of record for a Criminal Homicide trial captioned *People v. Ricardo Henry*, bearing Index No. 63/2020." Then, shortly after the trial ended, and two weeks after her niece's suicide attempt, another niece was hospitalized due to complications relating to a high-risk pregnancy.[59] Russell cared for her during her stay in the hospital and after the arrival of her newborn baby in the first week of July 2024.[60]

In her declaration then, Russell claims that the confluence of three separate events made it impossible for her to meet the July 1 deadline: an ongoing criminal trial, one niece's suicide attempt, and another's medical issues. However, Russell leaves unsaid that a jury returned a verdict in *People v. Ricardo Henry* on May 20, 2024.[61] Thus, not only is Russell's sworn statement that she was the attorney of record for Henry's trial on July 1, 2024 false, that trial should have had almost no impact on her ability to meet the July 1 deadline.[62]

---

[58]  *Id.* at ¶ 10.
[59]  *Id.* at ¶¶ 12-15.
[60]  *Id.*
[61]  *People v. Henry*, No. 63/2020 (N.Y. Crim. Ct., Bronx Cnty.).
[62]  The Court notes that Henry was not sentenced until August 15, 2024, so the proceedings had not concluded. However, the *trial* certainly had. While the Court is admittedly unfamiliar with the mechanics of criminal sentencing in New York state court, it is skeptical that Russell's ability to meet a July 1 deadline was materially impacted by a sentencing which was still a month-and-a-half in the future. In all events, Russell's statement that her niece's hospitalization in late-June occurred "[s]hortly after the trial ended, and two weeks after Ellie's [mid-June] suicide attempt" appears to be a misrepresentation.

Nor should the hospitalization of her niece due to pregnancy complications, which largely, if not entirely, occurred after the July 1 deadline. In all events, the health problems of her family members do not excuse Russell's failure to file an opposition, or at minimum another request for an extension, given two months to do so. Russell's track record indicates that if she had not missed the deadline because of a family emergency, she would have missed it for some other reason.

Russell avers that her failure to respond to STPD's and Nelson's Motion was an aberration; though she is a solo practitioner who consistently carries a heavy case load, Russell, referring to her track record in this case in support, maintains that she is usually able to manage her professional responsibilities.[63] The Court does not draw the same conclusion from Russell's performance in this case. This is not, as Russell suggests, the first time that she has failed to meet a deadline; it is the last time.

The Court is also unmoved by Alter's suggestion that, now that he has taken the reins, it will be smooth sailing from here on out. Alter has been counsel of record for over a year. He has had the same duties as Russell to this Court and his client in that time. Alter's promise to not be derelict in those duties going forward is not a basis to ignore his failure to fulfill them in the past.

---

[63] *Id.* at ¶¶ 16-17. It goes without saying that there are not separate standards for attorneys with full calendars and those with fewer professional obligations. Further, it is the Court's experience that attorneys with many pending obligations are more cognizant of the impact any exigent circumstances have on their ability to meet pending deadlines.

### III.   STANDARDS OF REVIEW

#### A.   Vacatur of a Default

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure. Under Rule 55(a), the Clerk of Court is instructed to enter a *default* against a defendant who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." "Entry of a default is a prerequisite to entry of a *default judgment* under Rule 55(b)."[64]

A decision to set aside an entry of default under Federal Rule of Civil Procedure 55(c) "is left primarily to the discretion of the district court."[65] "In general, Courts disfavor the default procedure 'because the interests of justice are best served by obtaining a decision on the merits.'"[66] "As such, 'Rule 55(c) motions are construed liberally in favor of the movant.'"[67]

Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)," which

---

[64] *Dumont Aircraft Charter, LLC v. Valvano*, No. 3:22-CV-00572, 2022 WL 4472457, at *2 (M.D. Pa. Sept. 26, 2022) (quoting *Sys. Indus., Inc. v. Han*, 105 F.R.D. 72, 74 (E.D. Pa. 1985) and citing *Enigwe v. Gainey*, Civil Action No. 10-684, 2012 WL 213510, at *2 (E.D. Pa. Jan. 23, 2012)).

[65] *Bailey v. United Airlines*, 279 F.3d 194, 204 (3d Cir. 2002) (quoting *Hritz v. Woma Corp.,* 732 F.2d 1178, 1180 (3d Cir.1984)).

[66] *Dumont*, 2022 WL 4472457, at *3 (quoting *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 307 (E.D. Pa. 1995)).

[67] *Id.* (quoting *Momah*, 161 F.R.D. at 307; and citing *Hamilton v. Edell*, 67 F.R.D. 18, 20 (E.D. Pa. 1975)).

provides an enumerated list of bases for relief from a final judgment, order, or proceeding.

### B.  Reconsideration

"Although not specifically recognized by any of the Federal Rules of Civil Procedure, a motion for reconsideration may be viewed and considered under either Rule 59(e) or 60(b)."[68]

Federal Rule of Civil Procedure 59(e) provides that "a party may file a motion to amend or alter a judgment no later than 28 days after the entry of the judgment." "Rule 59(e) is 'a device [ ] used to allege legal error,' and may only be used to correct manifest errors of law or fact or to present newly discovered evidence."[69] Accordingly, a motion for reconsideration under Rule 59(e) must rely on at least one of the following three (3) grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."[70]

A motion for reconsideration under Rule 60(b) is similarly narrow in scope, and must rely on at least one of the six grounds enumerated in the rule: (1) mistake,

---

[68]  *Knopick v. Downey*, 963 F.Supp.2d 378, 387 (M.D. Pa. 2013) (citing, *inter alia, Jones v. Pittsburg Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990)).

[69]  *Rollins v. May*, No. CV 19-1255-LPS, 2022 WL 605577, at *1 (D. Del. Jan. 5, 2022) (quoting *Howard Hess Dental Labs, Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)).

[70]  *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)); *In re Energy Future Holdings Corp.*, 904 F.3d 298, 311 (3d Cir. 2018); *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013)).

inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) a void judgment; (5) the satisfaction, release or discharge of a judgment or inequity in the prospective application of the judgment; or (6) any other reason justifying relief from operation of the judgment.

A motion for reconsideration may also be appropriate "where the court has misunderstood a party or has made a decision outside the adversarial issues presented to the court by parties, or has made an error not of reasoning, but of apprehension."[71]

## IV.   MORGAN'S MOTIONS

### A.     Motion for Vacatur of Default under Rules 55(c) and 60(b)

Defendants assert that Morgan's arguments in support of setting aside the default judgment fail at the first step because there is no default judgment to set aside.[72] Whereas Morgan's failure to abide by the July 1 deadline may be a default in the colloquial sense, Defendants argue that is not what is meant by default as the term is used in Rule 55. Morgan maintains that the Court's analysis of the *Poulis* factors necessarily demonstrates that a default was entered in this case.[73]

---

[71]  *Lombardo v. Flynn*, No. 4:11-CV-2220, 2018 WL 11473357, at *2 (M.D. Pa. Oct. 5, 2018) (internal quotations and citations omitted).

[72]  Doc. 124, Section V.A.

[73]  Doc. 125, Section III.A.

The Third Circuit's opinion in *Poulis v. State Farm Fire & Casualty Company* sets out six factors to be "weighed by the district courts in order to assure that the 'extreme' sanction of dismissal or default is reserved for the instances in which it is justly merited."[74] Reasoning that the Court dismissed the case after applying the *Poulis* factors, and that *Poulis* applies in cases of default, therefore there must have been a default judgment here, Morgan overlooks that *Poulis* is also implicated in cases of dismissals, and that dismissals are not default judgments.[75]

Nevertheless, even if the Court agreed that Rule 55 did apply, vacatur of that judgment is not warranted. The Court disagrees that Russell established "good cause" for her latest failure to adhere to a Court deadline or that the failure to do so was the result of "excusable neglect." Not only was Russell's failure to meet the July 1 deadline simply the latest in a long line of such failures, certain averments in her declaration are also internally inconsistent or demonstrably false. The last blown deadline also came after the Court explicitly warned Russell that future failures to adhere to Court Rules or deadlines could result in sanctions. As to the hardships

---

[74]    *Poulis*, 747 F.2d at 870.

[75]    *See id.* (*Poulis* factors are to be applied before imposing "sanction of dismissal *or* default") (emphasis added); *Beale v. Experian Info. Sols., Inc.*, No. CV 22-4810, 2023 WL 8936342, at *1 (E.D. Pa. Dec. 27, 2023) (collecting cases and observing that "[c]ourts in this Circuit generally apply the *Poulis* factors when considering *either* the entry of default judgment *or* the dismissal of a complaint, with prejudice") (emphasis added); *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (quoting *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir.1992), observing that "not all of the *Poulis* factors need be satisfied to *dismiss a complaint*"). *But see Williams v. Los Angeles Sheriff's Dept.*, No. CV 17-05640-AB (EX), 2020 WL 5948286, at *7 (C.D. Cal. June 29, 2020) (collecting cases holding that Rule 55 applies indicates that it is applicable to the entry of any default, including one entered as a sanction).

Russell and her family have faced, they have the Court's sympathy. But such hardships are not a basis to allow her to continue to waste the Court's and the litigants' time.

The Court is also unmoved by Morgan's argument that the delay caused by Russell's failure to adhere to the deadline was *de minimis*. As evidenced by Russell's several prior failures to meet deadlines, it is likely that the delay would have extended for as long as the Court allowed it to. Morgan's suggestion that the Court is too diligent in managing its docket is not well taken.

Morgan's Motion under Rule 55 and 60 then turns into a Motion for Reconsideration under those Rules as he argues that the Court erred by granting Defendants' Motion solely on the basis of Morgan's default.[76] To the extent that Rule 55 is a proper vehicle for a Motion for Reconsideration,[77] Morgan's Motion is untimely and procedurally improper.[78] In any event, Morgan's argument that the

---

[76] Doc. 121, at 5–6.

[77] *See* !*Sell v. Country Life Ins. Co.*, No. CV-15-00353-PHX-DJH, 2017 WL 5705826, *1 (D. Ariz. Apr. 10, 2017) (observing, without deciding which is the correct standard, the distinct legal standards for reconsideration and relief under Rule 55(c) in another case where the Court entered default as a sanction); *JTH Tax LLC v. McHugh*, No. C20-329RSM, 2021 WL 5182353, at *1 (W.D. Wash. Oct. 26, 2021) (same); *Mason v. Lewis Contracting Services, LLC*, No. 3:18CV00095, 2020 WL 1931982, at *2 n.1 (W.D. Va. Apr. 21, 2020) (rejecting argument that court should analyze motion as one for reconsideration, rather than one to set aside a default under Rule 55).

[78] Local Rule 7.10 requires that Motions for Reconsideration, except those brought under Rule 59, to be filed within 14 days and accompanied by a brief in support. Morgan's Motion was filed, without a supporting brief, 28 days after the ruling he implores the Court to reconsider.

Court erred by not addressing the merits of his claims against STPD and Nelson in its July 3 Order is also not well taken.[79]

Arguing that the Court erred by failing to *sua sponte* conduct a more searching inquiry into the merits of his claims, Morgan cites no caselaw in support of his position nor does he explain how it would have changed the result. While courts are obliged to "consider whether the 'unchallenged facts constitute a legitimate cause of action'" prior to entering a default judgment under Rule 55, that is not the inquiry required by *Poulis*.[80] The Court's finding that Morgan's claims lack merit under that analysis was based upon its prior ruling *dismissing those claims*. Had the Court conducted the inquiry anew, it would have reached the same conclusion.

Insofar as Morgan faults the Court for not independently considering the merits of Defendants' Motion for Reconsideration in its prior Order, any error was harmless. As explained below, reconsideration, albeit not on the grounds that Defendants argue in their Motion, was warranted. Nor is it the responsibility of the Court to formulate arguments for a party, particularly one represented by counsel,

---

[79]  Morgan says that the Court's April 18, 2024 Memorandum Opinion regarding Defendants Motions to Dismiss "provided an extensive explanation as to why Plaintiff Morgan's Count I and II claims . . . *should not be dismissed* [and] *did not* provide analysis" as to why those counts should be dismissed. Doc. 121, at 6-7 (emphasis supplied). As the Court plainly did not find Morgan's claims should not be dismissed then dismiss them anyway, it is assumed Morgan means to say that the Court found that dismissal *with prejudice* was not warranted.

[80]  *Roark*, 2024 WL 666179, at *2 (quoting *Broad Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008)). The distinct inquiries under Rule 55 and *Poulis* also serve to highlight that the Court's July 3 Order did not enter a default judgment.

which is what it would need to do to grant Morgan his requested relief and deny Defendants' Motion.[81]

### B.    Motion for Reconsideration under Rule 59(e)

In the alternative, Morgan moves for reconsideration under Rule 59(e), again suggesting that the Court erred by not conducting an independent inquiry into the merits of his claims and Defendants' motion.[82] Cases and claims are dismissed on procedural grounds, that is without a determination of the underlying merits, all the time. The purpose of the *Poulis* factors, which the Court applied in its July 3 Order, is to ensure that dismissal in such cases is appropriate.

Only in his Reply brief does Morgan fault the Court's *Poulis* analysis. Arguments raised for the first time in reply are waived.[83] Nevertheless, Morgan's argument is not well taken. Morgan claims that the Court did not actually weigh the six *Poulis* factors. Instead, he says that the Court merely "packed together" four of the six *Poulis* factors together and finds that they were satisfied solely because of Morgan's default.[84] That is not what the Court did at all. The Court noted "Morgan's

---

[81]  *Heckman v. North Penn Comprehensive Health Svcs.*, No. 4:20-1680-MWB, 2024 WL 4009639, at *16 (M.D. Pa. Aug. 30, 2024) (citing *McClung v. 3M Co.*, No. CV162301ESSCM, 2019 WL 4668053, at *4 (D.N.J. Sept. 25, 2019)).

[82]  Doc. 121, at 7.

[83]  *See Gucciardi v. Bonide Prods., Inc.*, 28 F. Supp. 3d 383, 393 (E.D. Pa. 2014) ("Where a reply brief raises new arguments in support of a motion for summary judgment, the district court is justified in disregarding them.").

[84]  Doc. 125, at 4.

history of dilatoriness and the impact it has had on this litigation."[85] It observed that Russell had explicitly been cautioned that continued failures to meet deadlines and otherwise adhere to the rules could result in sanction.[86] It also observed that the failure of Morgan's claims to survive two motions to dismiss called into question their merit.[87] Morgan's failure to meet the July 1 deadline was certainly a but-for cause, but it was hardly the only reason for the Court's ruling.

Further, the Court *did* weigh the *Poulis* factors. As the Court observed, but Morgan has overlooked, "not all of the *Poulis* factors need be satisfied in order to dismiss a petition."[88] The Court found that four of the factors were satisfied. It noted that one of the factors "counsels neither for nor against dismissal."[89] The Court did suggest that Russell, rather than Morgan, "bears responsibility for the failure to diligently prosecute this case." However, even if that factor militates against dismissal, where four factors support dismissal and another is neutral, dismissal is warranted.[90]

---

[85] July 3 Ord. 4.

[86] *Id.*

[87] *See also Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (claims deemed to have merit under *Poulis* analysis when they have survived a motion to dismiss).

[88] *Id.* (quoting *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liab. Litig.*, 381 F. Supp. 2d 421, 425 (E.D. Pa. 2005); *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)).

[89] *Id.* However, if the Court were to revisit the issue of whether Morgan or his counsel have acted in bad faith, it would take a dim view of Russell's misrepresentations in her declaration in which she tries to explain her failure to meet the July 1 deadline. *Supra* n.63.

[90] To illustrate the point, it may be helpful to imagine a scale, with four factors on the dismissal side, and one factor on the other. Unless the one factor on its own is particularly compelling,

Morgan may disagree with the Court's analysis, but mere disagreement is insufficient for him to carry his burden to show that this is a case where reconsideration is warranted in favor of review through an appeal taken in its ordinary course.[91]

## V.   STPD AND NELSON'S RECONSIDERATION MOTION

If the Court were to grant Morgan's Motion, it would not, as Morgan suggests, have the effect of restoring Counts I and II of the Third Amended Complaint against STPD and Nelson.[92] Doing so would have the effect of denying STPD's and Nelson's Motion for Reconsideration without reaching the merits, meaning Morgan will have successfully opposed that Motion without ever filing an opposition.[93]

### A.   Defendants' Motion Fails on Its Own Merits

The Court disagrees with Defendants that reconsideration is warranted because of an intervening change in the law or that failure of Morgan to raise Rule

---

the four factors on the other side will drag that side of the scale down, thus weighing in favor of dismissal.

[91]   *Liberty-Lincoln Mercury, Inc. v. Ford Motor Co.*, No. 02-CV-4146 (PGS), 2009 WL 10708885, at *2 (D.N.J. Oct. 20, 2009).

[92]   The parties stipulated to the withdrawal of STPD and Nelson from the Third Amended Complaint pending the resolution of Morgan's Motion. Doc. 122.

[93]   Indeed, Morgan's pending Motion asks the Court for "reconsideration and upon reconsideration and/or vacating the default and upon vacatur, denial of [Defendants'] motion" but nowhere does Morgan argue that denial of Defendants' Motion on the merits is proper. It is worth belaboring the point: On July 3, 2024, the Court entered an Order dismissing STPD and Nelson with prejudice based on Morgan's repeated failure to adhere to Court Rules and deadlines, including his failure to timely oppose Defendants' Motion. Morgan now asks the Court to reconsider that Order *but still has not opposed Defendants' Motion*. That alone warrants denial of Morgan's Motion.

15 in his opposition excuses Defendants from researching the relevant caselaw.[94] Had Defendants done that research, they would have discovered the *Moore* opinion.[95] Further, though *Moore* was the first time the Third Circuit had confronted the relevant issue, it hardly represented a change in the law; every other Court of Appeals to have considered the issue held similarly.[96]

Even if the Court were to find that *Morgan* represented an intervening change in the law, Defendants' Motion fails on the merits. In their Motion, STPD and Nelson asserts three separate bases on which the Court's decision was inconsistent with *Moore*: 1) Rule 15(c)(1)(C) allows for the notice period to be extended to include only "mandatory extensions for good cause"; (2) Rule 15(c)(1)(C) only allows for an extension period of the notice period where an extension had been previously granted; and (3) "*Moore* held that the dismissal of the original complaint was a bright-line marking the outer limit of timel[iness] under Rule 15(c)(1)(C)."[97] The Court addresses each argument in turn.

---

[94] *Cf.* Doc. 112 at 12 ("Plaintiff did not even discuss Fed. R. Civ. P. 15, nor any case law pertaining to the notice requirements of Rule 15(c)(1)(C), so the undersigned did not undertake to review recent relevant caselaw."). As Defendants did discuss Rule 15, it seems that it would be prudent for them to research the relevant caselaw. *Cf.* Fed. R. Civ. P. 11(b)(2) (imposing requirement that any legal contentions are warranted by existing law).

[95] *See Ryan v. Commr. of Soc. Sec.*, No. CV 19-140-J, 2020 WL 13547734, at *3 (W.D. Pa. Aug. 31, 2020) (noting that opinions released while briefing is open do not represent intervening changes in law). There may be the case where there is a material change that comes so late in the briefing schedule that a party may be excused for failing to discover it. However, that is not the argument Defendants raise.

[96] 96 F.4th at 624.

[97] Doc. 112, at 7.

Defendants' note that "[a]ccording to *Moore*, the notice period required by Rule 15(c)(1)(C) 'incorporates *mandatory extensions* granted for *'good cause'* under Rule 4(m).'"[98] In its prior Memorandum Opinion, the Court found that there was no indication "that good cause exists for [Morgan's] delay in naming STPD and the District Attorneys as Defendants."[99] Defendants suggest that, under *Moore*, this should have been the end of the inquiry.

*Moore*'s holding was not so narrow. The Third Circuit emphasized that "Rule 15(c)(1)(C) was drafted to include in its notice period '*any additional time* resulting from *any extension* ordered by the court pursuant to' Rule 4(m)."[100] As the Court explained previously, Third Circuit precedent mandates that, in determining whether to grant such an extension, courts "first determine[] whether good cause exists" then, "[i]f good cause does not exist, the district court *must* consider whether to grant a discretionary extension of time."[101] It follows that any discretionary extension—not just extensions for good cause—are included in Rule 15(c)(1)(C)'s notice period.

That brings the Court to Defendants' second argument, which is that no such extension was actually granted.[102] Defendants overlook the fact that no extension

---

[98]  *Id.* 8 (quoting 96 F.4th at 625) (emphasis supplied).

[99]  MTD Op. 16.

[100]  *Moore*, 96 F.4th at 625 (quoting Fed. R. Civ. P. 15 Adv. Comm. Notes (1993)) (emphasis supplied).

[101]  MTD Op. 16 (quoting *Davis v. Samuels*, 962 F.3d 105, 116 (3d Cir. 2020); *Boley v. Kaymark*, 123 F.3d 756, 758 (3d Cir. 1997)).

[102]  Defendants argue specifically that no "good cause" extension was granted. As the argument would apply with equal force to any extension, whether mandatory or discretionary, the Court addresses Defendants' arguments accordingly.

was granted because no extension was necessary; Defendants waived service of process and did not raise an insufficiency of process defense in its motion to dismiss.[103] The Court need not decide an issue that Defendants have waived.[104] To accept Defendants' argument would be to hold that a defendant may defeat relation back under Rule 15 simply by waiving service. The Court declines to do so.

Finally, in arguing that *Moore* held that the dismissal of the original complaint as a bright line for the outer limit of timeliness under Rule 15(c)(1)(C), Defendants confuse the facts of *Moore* with its holding. The filing of an amended complaint does not necessarily terminate the Rule 4(m) period.[105]

## B.    Defendants' Motion Would Nevertheless Be Granted

In its prior Opinion, the Court observed that, as Morgan pointed out in his opposition to Defendants' Motions to Dismiss and Defendants did not contest, STPD and Luke Nelson were named, albeit incorrectly, in the First Amended Complaint.[106]

---

[103]  Docs. 88-89.

[104]  *See* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (3d ed. 2020) ("[A]ny time a defendant makes a pre-answer Rule 12 motion, he or she must include — on penalty of waiver — the defenses set forth in subdivisions (2) through (5) of Rule 12(b). If one or more of these defenses are omitted from the initial motion but were available to the movant at that time, they are permanently lost.").

[105]  *McGraw v. Gore*, 31 F.4th 844, 850 (4th Cir. 2022); *Lee v. Airgas Mid-South, Inc.*, 793 F.3d 894, 898 (8th Cir. 2015). *See also In re Tarragon Corp.*, No. 09-10555 DHS, 2013 WL 2149158 (Bankr. D.N.J. May 16, 2013) (denying motion to dismiss claim brought in Third Amended Complaint where the claim related back under Rule 15(c)(1)(B) to claims brought in the Second Amended Complaint).

[106]  MTD Op. at 19-20.

The Court then reasoned that Morgan's failure to properly name STPD and Nelson was "just the sort of 'mistake' for which Rule 15 provides a remedy."[107]

In doing so, the Court, following Defendants' lead when they failed to correct Morgan in their Reply brief, overlooked that nothing in the *original* Complaint would have put STPD or Nelson on notice that they would have been named as defendants in the first place. Though the claims against STPD and Nelson in the Second Amended Complaint related back to those of the First Amended Complaint, the First Amended Complaint did not relate back to the original Complaint.[108] Therefore, the pleading that put STPD and Nelson on notice that Morgan intended to name them as Defendants came well after the statute of limitations had run.[109]

Ordinarily, Defendants' failure to make this argument in the first instance would preclude the granting of a Motion for Reconsideration.[110] However, whether to grant or deny a Motion for Reconsideration is within the Court's discretion.[111] Here, the Court finds that Defendants' error of failing to raise a meritorious argument is, in part, attributable to the nature of Morgan's opposition to the Motion to Dismiss, which was, itself, largely untethered to the relevant law. Morgan never argued that

---

[107]  *Id.* at 19 (citing *Arthur v. Maersk, Inc.*, 434 F.3d 196, 209 (3d Cir. 2006)).

[108]  *Cf. In re Tarragon Corp.*, 2013 WL 2149158, at *10 (claims in subsequent amended complaints relate back to claims timely brought in an earlier amended complaint).

[109]  *See* MTD Op. Section IV.B.1 (discussing applicable statutes of limitations).

[110]  *See Farnsworth v. Manor Healthcare Corp.*, No. CIV.A. 01-CV-33, 2004 WL 614774, at *2 (E.D. Pa. Feb. 10, 2004) (reconsideration unwarranted where movant failed to make argument in first instance).

[111]  *O'Neill v. City of Philadelphia*, 289 Fed. Appx. 509, 513 (3d Cir. 2008).

relation back was appropriate under Rule 15, instead analyzing relation back under the New York Civil Practice Law and Rules.[112]  This Court is, of course, obliged to apply the Federal Rules of Civil Procedure.[113] Therefore, though the Court ultimately rejected Defendants' argument against relation back, it was not because Morgan himself had raised the correct argument. Morgan can hardly complain about an adverse ruling on an issue that he failed to effectively argue.

Further, any error of Defendants pales in comparison to those of Morgan, which have been detailed extensively across the Court's last three Opinions.

Finally, it is best, in the Court's view, to reach the correct result. Putting aside any errors of the parties or the Court, the correct outcome under the law would have been to grant Defendants' Motion to Dismiss with prejudice in the first instance. Though it would have been preferable to reach that result directly rather than taking such an absurdly circuitous route, that is no reason to continue to venture down the wrong path.

Therefore, if the Court were to grant Morgan's pending Motion, it would nevertheless exercise its discretion to then grant Defendant's Motion for Reconsideration.

---

[112]  Doc. 105, at 6-7.

[113]  MTD Op. at 17 (citing *In re Tylenol (Acetaminophen) Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 2436, 2015 WL 7075812, at *9 n.37 (E.D. Pa. Nov. 13, 2015); *Loudenslager v. Teeple*, 466 F.2d 249, 250 (3d Cir. 1972)).

## VI.   CONCLUSION

For the foregoing reasons, Morgan's Motion to Vacate the Judgment is denied. Morgan's Motion for Reconsideration is also denied. If either motion were granted, it would result in the Court granting STPD and Nelson's Motion for Reconsideration, precluding the relief Morgan requests. Put differently, even if Morgan's Motion were granted, it would be denied. Having denied Morgan's Motion several times over, the Court will direct the remaining Defendants to respond to the Third Amended Complaint.

Regarding the remaining Defendants' response to the Third Amended Complaint, the Court notes that Defendants had previously moved to extend the responsive pleading deadline to September 5, 2024.[114] The Court opted instead to stay the deadline pending resolution of Morgan's Motion and denied the request for an extension as moot. In doing so, the Court instructed those other Defendants to "prepare a response in the meantime so that, if Morgan's Motion is denied, they are prepared to file that response in short order."[115] The Court trusts that Centre County has done so, and therefore will be able to file its response by September 17, 2024.[116]

The Court offers one final observation: It is undisputed that Plaintiff Dale Morgan suffered an injury when, after having his identity stolen, he was improperly

---

[114] Doc. 120.

[115] Doc. 123, ¶ 3 n.11.

[116] Brown has already filed his Motion to Dismiss. Doc. 126. Therefore, only Centre County is left to respond.

arrested and detained. While it may be, as in many § 1983 cases, that is insufficient to entitle him to relief, his attempts to seek such relief have been stymied by his own attorneys as much as the controlling law. It is bad enough that Morgan spent time in jail for crimes others committed; he deserves better than to be further beleaguered by his own counsel.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge