# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DALE MORGAN,

          Plaintiff,

    v.

CENTRE COUNTY and
MICHAEL D. BROWN,

          Defendants.

No. 4:23-CV-00872

(Chief Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 6, 2024

## I.    BACKGROUND

Plaintiff Dale Morgan initiated this Section 1983 action in August 2021 with the filing of a complaint in the United States District Court for the Eastern District of New York.[1] In his initial complaint, Morgan named as defendants the Commonwealth of Pennsylvania, Pennsylvania State Police ("PSP"), Centre County, Pennsylvania, several unidentified law enforcement officers, and PSP Trooper Michael D. Brown.[2] Morgan filed an amended complaint in November 2022,[3] which the defendants moved to dismiss.[4] Several defendants also filed a motion to change venue.[5] The Honorable Eric R. Komitee granted the latter request

---

[1]    Complaint, Doc. 1.
[2]    *Id.*
[3]    First Amended Complaint, Doc. 28
[4]    Commonwealth Motion to Dismiss, Doc 31; Centre County Motion to Dismiss, Doc. 34.
[5]    Motion to Transfer, Doc. 29.

transferring the case to the Middle District of Pennsylvania. [6] He then denied the motions to dismiss without prejudice to renew before the transferee court.[7]

Following transfer, defendants again moved to dismiss the amended complaint.[8] This Court granted those motions, dismissing the claims against the Commonwealth and PSP with prejudice, and granting Morgan leave to amend his claims against Brown and Centre County.[9] Morgan filed a second amended complaint in December 2023, naming several additional defendants,[10] and all defendants moved to dismiss again.[11] This Court granted the motions to dismiss, granting Morgan leave to amend as to the false arrest and imprisonment, and related municipal liability claims, against defendants Centre County, Brown, Luke Nelson, and Spring Township Police Department ("STPD").[12] In May 2024, Defendants Nelson and STPD, both of whom had only been added to the suit with the second amended complaint, filed a motion for reconsideration arguing that they should have

---

[6]   Memorandum and Order, Doc. 41.
[7]   *Id.*
[8]   Centre County Motion to Dismiss, Doc. 46; Commonwealth, PSP, and Brown Motion to Dismiss, Doc. 55.
[9]   Order, Doc. 66.
[10]  Second Amended Complaint, Doc. 73.
[11]  Centre County Motion to Dismiss, Doc. 82; Brown Motion to Dismiss, Doc. 90; Cantorna and Smith Motion to Dismiss, Doc. 95; Nelson and STPD Motion to Dismiss, Doc. 97.
[12]  Order, Doc. 110.

been dismissed with prejudice.[13] The Court granted that motion as unopposed in July 2024,[14] and then denied Morgan's motion for reconsideration in September 2024.[15]

In July 2024, while the parties were litigating the dismissal of Nelson and STPD, Morgan filed his third amended complaint.[16] Count One attempts to state a claim for false arrest and imprisonment in violation of the Fourth and Fifth Amendments, while Count Two attempts to state a municipal liability claim based on the same conduct.[17] Now that Nelson and STPD have been dismissed with prejudice from this suit, the only remaining defendants are Brown and Centre County (the "Defendants"). In September 2024, Brown and Centre County filed motions to dismiss the third amended complaint for failure to state a claim.[18] The motions are now ripe for disposition. For the reasons stated below, they are granted with prejudice.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[19] and

---

[13]   Motion for Reconsideration, Doc. 111.
[14]   Order, Doc. 117.
[15]   Order, Doc. 129.
[16]   Third Amended Complaint, Doc. 118.
[17]   *Id.*
[18]   Motion to Dismiss, Doc. 126; Motion to Dismiss, Doc. 130.
[19]   550 U.S. 544 (2007).

*Ashcroft v. Iqbal*,[20] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[21] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[22]

## III.    STATEMENT OF FACTS

The facts alleged in the third amended complaint, which this Court must accept as true for the purposes of this motion, are as follows.

In an investigation centering on identity theft, Dale Morgan was mistakenly arrested because the true culprit stole his identity. Sherica Chambers, Horace Henry, and Andrew Herdsman were all members of a criminal identity theft conspiracy being investigated in Centre County during January and February of 2019.[23] Among the conspirators, Henry was known by the alias "Metro."[24] The conspiracy, as laid

---

[20]    556 U.S. 662 (2009).

[21]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[22]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[23]    Third Amended Complaint, Doc. 118 ¶¶18-20, 27.

[24]    *Id.* ¶¶19, 30.

out by Brown's affidavit, involved suspects using stolen identities to create fraudulent Sprint accounts and then using counterfeit identification to receive Sprint cellphones when they were delivered.[25] The investigation included the active involvement of the Department of Homeland Security-HIS, the PSP, and Centre County local law enforcement agencies.[26] According to the third amended complaint, "Centre County works in tandem in state troopers and other local municipal police officers to investigate allegations and initiate criminal charges."[27]

On January 2, 2019, Chambers rented a 2018 gray Volkswagen Passat bearing Pennsylvania license plate KRS2315 at John F. Kennedy International Airport.[28] Chambers handed the car off to Henry.[29] While Henry was driving the car on January 4, 2019, PSP conducted a traffic stop of the rental car.[30] But Henry—who, after all, was orchestrating an identity theft criminal enterprise—did not present accurate identification to the officer at the traffic stop.[31] Instead, unbeknownst to the officer, Henry provided a doctored driver's license displaying his photograph but with the name and identifying information of the Plaintiff.[32] The officer noted traffic violations but allowed Henry—who he believed to be Morgan—to leave.[33] But the

---

[25]   *Id.* ¶54.
[26]   *Id.*
[27]   *Id.* ¶24.
[28]   *Id.* ¶28.
[29]   *Id.* ¶29.
[30]   *Id.* ¶31.
[31]   *Id.* ¶¶32, 34.
[32]   *Id.*
[33]   *Id.* ¶33.

traffic stop would later be connected to law enforcement's investigation into the identity fraud conspiracy.

On January 24, 2019, law enforcement surveilled the rented Volkswagen Henry was driving, with Herdsman as his passenger, between 1:10 p.m. to 2:00 p.m.[34] Henry and Herdsman had parked in front of a Spring Mills, Pennsylvania residence, waiting for FedEx to deliver cellphones they had ordered using stolen identifying information.[35] After Herdsman exited the Volkswagen to retrieve the cellphones, PSP Troopers Michael D. Brown and Thomas Stock pursued and arrested him.[36] Meanwhile, Henry fled the scene in the Volkswagen; officers recovered a cloth bag in the area containing fraudulently ordered iPhones and an iPad.[37]

A subsequent incident that same day appeared to also be in furtherance of the conspiracy. Chambers went to a different residence in Patton Township, Centre County, and waited there from 1:45 p.m. to 2:20 p.m. in another vehicle, at which point she left; two Sprint cellphones were delivered to the address by FedEx after Chambers' departure.[38] On January 26, 2019, Chambers returned the Volkswagen to Avis, the car rental company at JFK airport.[39]

---

[34] *Id.* ¶37.
[35] *Id.* ¶38.
[36] *Id.* ¶¶39-40.
[37] *Id.* ¶41.
[38] *Id.* ¶¶44-45.
[39] *Id.* ¶48.

On January 25, 2019, Brown and an FBI agent interviewed Herdsman.[40] After Brown showed Herdsman surveillance footage of the Volkswagen, Herdsman identified himself and Chambers.[41] Brown and STPD Officer Luke Nelson conducted a subsequent interview of Herdsman on January 28.[42] That same day, Avis provided Brown with surveillance footage capturing Chambers' return of the vehicle.[43] Law enforcement officers then accessed the Pennsylvania DMV database to obtain information on the vehicle.[44]

Various sources of evidence available to law enforcement gave officers a view of what Henry looked like. The cloth bag recovered from the scene of Herdsman's arrest contained an iPad with personal identifying information and photos of Henry.[45] Surveillance footage also captured Henry entering a Days Inn in State College, Pennsylvania on January 17, and a Wal-Mart in Spring Mills, Pennsylvania on January 24, 2019.[46]

Using the information at his disposal, Brown drafted an affidavit of probable cause supporting an arrest warrant for Dale Morgan, allegedly assisted by Centre County District Attorney Bernie Cantorna and Centre County First Assistant District

---

[40]  *Id.* ¶46.
[41]  *Id.* ¶47.
[42]  *Id.* ¶49.
[43]  *Id.* ¶53.
[44]  *Id.* ¶56.
[45]  *Id.* ¶43.
[46]  *Id.* ¶35-36.

Attorney Mark Smith.[47] Brown was in possession of, and had viewed, the surveillance tapes and photographs clearly identifying Henry's physical characteristics and appearance.[48]

But Morgan states many times throughout the third amended complaint that Brown never compared these depictions to any photographs of Morgan.[49] Morgan at first states that Brown had a photograph of Morgan in his possession,[50] but subsequent parts of the complaint clarify that these photographs were those in government databases, such as the New York DMV and Department of Homeland Security.[51] Brown and the other investigating officers did not present video footage of Henry or Morgan to Herdsman to make a final identification,[52] speak with the PSP Trooper who conducted the traffic stop on January 4,[53] speak with law enforcement officials who had surveilled Henry on January 24,[54] or speak with FedEx drivers involved in the deliveries.[55] In sum, there was "no attempt whatsoever" to conduct an identification procedure that would have clarified that Henry was not Morgan.[56] The comparison may have revealed a discrepancy in

---

[47] *Id.* ¶¶57-58.
[48] *Id.* ¶¶60, 64.
[49] *Id.* ¶¶61, 62, 65, 120-21.
[50] *Id.*
[51] *Id.* ¶¶ 93, 117.
[52] *Id.* ¶86.
[53] *Id.* ¶90.
[54] *Id.* ¶91.
[55] *Id.* ¶92.
[56] *Id.* ¶98.

appearance; while Morgan is a 6'1", 220-pound, dark-skinned black male, Henry is a 5'6", 150-pound, light-skinned black male.[57]

Morgan was not involved in the criminal conspiracy and has never been to Pennsylvania.[58] But because Brown filed the affidavit, Morgan was charged with five felony counts involving theft, conspiracy, identity theft, and receiving stolen property, and was named in an arrest warrant.[59] The third amended complaint also alleges that Centre County prosecutors Cantorna and Smith failed to question, examine, or confirm the identity of the true perpetrator, acquire the requisite knowledge to ensure the matter was competently investigated, disregarded contradicting data in the warrant application, and altogether wrongfully permitted Brown to file his warrant and failed to review it.[60]

On February 1, 2019, a Pennsylvania magistrate judge approved a warrant for Morgan's arrest based on Brown's affidavit.[61] Following the approval of this warrant, Detective Michael Langellotti, employed by the New York City Police Department,[62] served a criminal complaint on Morgan as a fugitive from justice and arrested him.[63] Langellotti's criminal complaint states that "Defendant's

---

[57] *Id.* ¶¶62, 64. The third amended complaint states that Henry is 5'3" tall. *Id.* ¶64. But the Presentence Report for Henry states that he is 5'6" tall. *Horace Henry v. United States*, No. 4:19-cr-00231, Presentence Report, Doc. 164 ¶56.
[58] *Id.* ¶74.
[59] *Id.* ¶¶71-73.
[60] *Id.* ¶¶76-84.
[61] *Id.* ¶103.
[62] *Id.* ¶21.
[63] *Id.* ¶104.

identification has been confirmed by . . . a photograph of the defendant provided by said jurisdiction,"[64] and the third amended complaint infers that "Defendants Brown, Nelson, and/or Smith" accessed one of these databases to acquire this picture and supply it to Langellotti.[65] Morgan was denied bail and remained at the Vernon C. Bain Correctional Facility in Bronx County, New York for approximately nine days before his release.[66]

On March 26, 2019, Brown wrote an email to the Queen's County District Attorney Office indicating that, after conferring with officials at the Centre County District Attorney's Office, the investigation had led to the withdrawal of charges against Morgan.[67] Morgan now brings a two-count complaint against Brown and Centre County.

## IV.   ANALYSIS

Title 42 U.S.C. § 1983 "creates a species of tort liability for the deprivation of any rights, privileges, or immunities secured by the Constitution."[68] In this case, Morgan seeks relief from Brown for Fourth Amendment violations under the theories of false arrest and false imprisonment.[69] He also seeks municipal liability against Centre County for the same alleged violations.[70]

---

[64]   Doc. 118-4 at 2.
[65]   Third Amended Complaint, Doc. 118 ¶119.
[66]   *Id.* ¶¶112, 126.
[67]   *Id.* ¶128.
[68]   *Manuel v. City of Joliet*, 580 U.S. 357, 362 (2017) (cleaned up).
[69]   Third Amended Complaint, Doc. 118 at 27.
[70]   *Id.* at 38.

### A.    Claims Against Brown

"False arrest and false imprisonment overlap; the former is a species of the latter."[71] "To bring a claim for false arrest, a plaintiff must establish '(1) that there was an arrest; and (2) that the arrest was made without probable cause.'"[72] "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."[73] "To state a claim for false imprisonment, a plaintiff must establish: (1) that [he] was detained' and (2) that the detention was unlawful."[74] As to the first prongs, an individual may be held liable where his "intentional actions set forth the arresting officer in motion" to cause the arrest or imprisonment; that means Brown may be liable because he wrote the affidavit of probable cause, even though he did not arrest or imprison Morgan himself.[75] The inquiry under the second prong, whether the arrest and subsequent detention were supported by probable cause, is "largely the same" for both false arrest and false imprisonment claims.[76]

---

[71]  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

[72]  *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)).

[73]  *Id.* at 202 (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).

[74]  *Id.* (quoting *James*, 700 F.3d at 682-83).

[75]  *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000). *See also Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (filing affidavit of probable cause with false statement or omission can support false arrest claim); *Diaz v. Carstaphen*, No. 22-CV-7465 (RBK/SAK), 2023 U.S. Dist. LEXIS 126688, at *11-12 (D.N.J. Jul. 24, 2023) (personal involvement based on supervisory authority over arrest).

[76]  *Id.*

Morgan has supplemented his allegations by laying out various materials at Brown's disposal which he could have used to compare Morgan and Henry. But the substance of Morgan's claim against Brown rises and falls on the same factors in each of this Court's analyses.

### 1.    Brown's Affidavit is Not Facially Invalid

First, as the Court has continued to emphasize, "[a]ssuming the truthfulness of Brown's affidavit, Morgan's false arrest and malicious prosecution claims would have to clear an astoundingly high bar to evade a qualified immunity defense."[77] "The threshold for establishing this exception is a high one"[78] because "an officer cannot be expected to question the magistrate's probable-cause determination."[79]

The arrest is valid unless "it is obvious that no reasonable competent officer would have concluded that a warrant should issue."[80] Morgan's third amended complaint, unlike his prior complaints, does allege "that Brown could verify Morgan's identity through any readily available information," and that "a picture of Henry, the man who was actually Metro, was available."[81] But it remains the case

---

[77]  Memorandum Opinion, Doc. 65 at 19.
[78]  *Messerchmidt v. Millender*, 565 U.S. 535, 547 (2012).
[79]  *United States v. Leon*, 468 U.S. 897, 922-23 (1984).
[80]  *Malley v. Briggs*, 475 U.S. 335, 342 (1986); *Armstrong v. Asselin*, 734 F.3d 984, 992 (9th Cir. 2013) (citing *Messerchmidt*, 565 U.S. at 556) (The warrant must be "so lacking in indicia of probable cause" that "it is apparent from a 'simple glance' at the face of the warrant itself, not a defect that would 'become apparent only upon a close parsing of the warrant application.'").
[81]  Memorandum Opinion, Doc. 65 at 21. The Court did not opine on whether supplementing this gap in the first amended complaint would allow it to survive dismissal. Indeed, the Court's reasoning makes it eminently clear that under controlling precedent, Morgan faced a nearly insurmountable bar to challenging the search warrant based on the face of the affidavit.

that any deficiency would only be revealed by a "close parsing" of Brown's affidavit.[82] "Successful plaintiffs in this Circuit generally demonstrate such deficiencies through 'bare bones' or 'skeletal' affidavits containing, at most, a few general sentences."[83] And as this standard is based upon the face of the affidavit itself, the reasoning set out in this Court's first Memorandum Opinion—which closely analyzed the facial validity of Brown's affidavit—applies equally here.[84]

## 2. It Is Implausible That Brown Intentionally or Recklessly Made a False Statement

Another exception to the general rule that officers may rely on arrest warrants is derived from the Supreme Court case of *Franks v. Delaware*.[85] Under this theory, the officers (1) "knowingly and deliberately, or with a reckless disregard for the truth, made false statements and omissions that create a falsehood in applying for a warrant;" and (2) "such statements or omissions are material, or necessary, to the finding of probable cause."[86] Under such circumstances, "the protection afforded

---

[82] *Id.* at 21.

[83] Memorandum Opinion, Doc. 65 at 20 (citing *Fiore v. City of Bethlehem*, 510 F.App'x 215, 221 (3d Cir. 2013); *United States v. Pavulak*, 700 F.3d 651, 664 (3d Cir. 2012) (collecting examples of "bare bones" affidavits); *Kolhas v. N.J.*, Civ. No. 16-1564, 2017 U.S. Dist. LEXIS 175134, at *14-15 (D.N.J. Oct. 23, 2017)).

[84] *See* Memorandum Opinion, Doc. 65 at 19-21; Memorandum Opinion, Doc. 109 at 22 ("Regarding Brown's affidavit, as before, the fact that a neutral magistrate approved the warrant, despite Brown not describing any steps he took to compare the appearance of Morgan to Metro in his affidavit, renders Brown's reliance on that warrant 'objectively reasonable' under binding Supreme Court precedent.") (citing *Messerschmidt*, 565 U.S. at 546-47).

[85] 438 U.S. 154 (1978).

[86] *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)); *see also Goodwin v. Conway*, 868 F.3d 321, 327-28 (3d Cir. 2016); *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469 (3d Cir. 2016); *Geness v. Cox*, 902 F.3d 344, 356-57 n.5 (3d Cir. 2018).

by the magistrate's review [of the affidavit] is lost; the magistrate will be unable to assess the circumstances for probable cause because he will not know what those circumstances actually are."[87] This analysis requires a "three-step procedure . . . . First, we assess the evidence the plaintiff asserts was recklessly omitted from the affidavit. Next, we reconstruct an affidavit that includes any recklessly omitted information. And finally, we assess the materiality of the omitted information to the probable cause determination."[88]

Morgan's briefings curiously fail to apply or even cite to this legal theory at all; the only cited cases set out the standard for municipal liability under *Monell*, which is irrelevant to an individual defendant's liability.[89] The Court nevertheless analyzes this theory because Morgan's brief and third amended complaint repeatedly refer to Brown's "recklessly drafted affidavit."[90] But Morgan fails at step one in any event, because no intentional or reckless false statement or omission is plausible from the complaint. Morgan does pepper the words "reckless" and "false" throughout his third amended complaint.[91] But saying that something is a reckless falsehood does not make it so, even if one says it in ***bolded italics***.

---

[87] *Dempsey*, 834 F.3d at 469.
[88] *Id.* at 470.
[89] *See* Brief in Opposition, Doc. 135, *generally*.
[90] *See id.* at 4; Third Amended Complaint, Doc. 118, *generally*.
[91] Third Amended Complaint, Doc. 118 ¶¶ 58, 78, 80.

Brown's misidentification of Morgan as the perpetrator is certainly a false assertion, but Morgan can only prevail if that false assertion was made with an intentional or reckless disregard for the truth; "[a]llegations of negligence or innocent mistake are insufficient."[92] And as Morgan alleges many times over that Brown never viewed the evidence which would exonerate Morgan, Brown's false statement cannot have been intentional.[93] So the only question is whether he made his false assertion with a reckless disregard for the truth.

In *Wilson v. Russo*, the Third Circuit explained that "assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting."[94] Whether an assertion is reckless "is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth."[95]

"[I]n general, the failure to investigate fully is not evidence of an affiant's reckless disregard for the truth."[96] In previous complaints, that is all Morgan alleged, for the evidence available to Brown did not establish the discrepancy between Henry and Morgan's identities. The third amended complaint's allegations center around Brown's failure to consult the evidence already available to him, by obtaining a

---

[92] *Franks*, 438 U.S. at 171.
[93] *See* Third Amended Complaint, Doc. 118 ¶¶61, 62, 65, 120-21.
[94] 212 F.3d 781, 783 (3d Cir. 2000).
[95] *Id.* at 788.
[96] *United States v. Brown*, 631 F.3d 638, 648 (3d Cir. 2011) (quoting *United States v. Dale*, 991 F.2d 819, 844 (D.C. Cir. 1993)).

picture of Morgan on a government database and then comparing it to Henry either by referencing various surveillance footage or speaking with the traffic officers. However, this is just another iteration of the same argument. Brown's conduct is certainly culpable—negligent, if not grossly negligent given the fact that he was investigating the ringleader of an identity fraud conspiracy—but Brown's negligent investigation does not show any willingness on Brown's part to distort the truth when misidentifying Morgan as the culprit.

*United States v. Brown* highlights the relevant distinction here.[97] In *Brown*, the officer authored an affidavit relaying incriminating evidence that he believed his fellow officer had told him when they spoke over the phone: that a van matching the description of the defendant's van had been spotted meeting with suspected bank robbers by "multiple witnesses."[98] The fellow officer testified at a hearing that he had said no such thing.[99] A divided panel held: "The fact that a statement is a fabrication or a figment of a speaker's imagination is sufficient reason for finding that it was not made in good faith—*i.e.*, that it was made with (at least) reckless disregard for the truth—even if the speaker testified that he believed the statement to be true."[100]

---

[97]   631 F.3d 638 (3d Cir. 2011).
[98]   *Id.* at 641-42.
[99]   *Id.*
[100]  *Id.* at 649.

While the "existence of contradictory evidence highlighted the problem" with the officer's affidavit, the "major flaw" supporting his reckless disregard for the truth was that the officer had "made up [the assertion] out of whole cloth."[101] The panel contrasted this situation from a mere "fail[ure] to corroborate" by explaining that, as "a reasonable person's default position is to doubt the proposition is true until there are grounds to believe it," "[t]he absence of sufficient grounding to support an averment constitutes an 'obvious reason[] for doubt' under *Wilson*."[102] The ruling therefore distinguished between a "total lack of evidentiary basis for making an averment" and "duplicative fact-checking" or a "fail[ure] to corroborate."[103]

Brown's conduct falls on the other side of that fine line. Unlike the officer in *Brown*, what evidence this defendant had reviewed supported his identification of Morgan as the culprit. Brown was therefore guilty of "fail[ing] to corroborate his averment," but there was not a "total lack of an evidentiary basis for making" it. Making an averment based on an incomplete survey of the evidence is negligent police work, and shoddy police work, but it is not police work evidencing a reckless disregard for the truth. In sum, the third amended complaint does not plausibly allege that Brown was aware of the risk that Morgan had been misidentified, so Morgan's allegations support negligence but not recklessness.

---

[101] *Id.* at 648.
[102] *Id.*
[103] *Id.* at 649.

### 3.    No Duty of Further Inquiry is Clearly Established

Morgan may have argued that because Brown was investigating the ringleader of an identity fraud conspiracy and based his identification of the culprit solely on the identity he provided at a traffic stop, he had obvious reasons to doubt the truth of his identification of Morgan as the culprit.[104] According to the United States Court of Appeals for the First Circuit's opinion in *United States v. Tanguay*, the argument is that a "web of circumstantial evidence set up a red flag – and that red flag may have been sufficient to create a duty of further inquiry."[105] However, Morgan failed to raise any such argument in his papers, and there is a limit to what the Court will raise on his behalf.

Even if Morgan's briefings could be construed as raising this issue, Brown's qualified immunity defense would have thwarted it regardless. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that

---

[104]  *See United States v. Tanguay*, 787 F.3d 44, 46 (1st Cir. 2015) (Selya, J.) ("Under some limited circumstances, however, the officer's duty may be broader: she may be obliged to inquire further in order to dispel serious doubts about either the credibility of an informant upon whom she relies or the veracity of the allegations underlying the attempted showing of probable cause."). It is unclear if even Morgan's circumstances would implicate this theory, since it is reasonable to rely on "what proves to be the flawed conclusions of a fellow officer." *Rogers v. Powell*, 120 F.3d 446, 454-55 (3d Cir. 1997).

[105]  *Id.* at 53 (citing *United States v. Chesher*, 678 F.2d 1353, 1361-62 (9th Cir. 1982)). *See also id.* at 46 ("All that is required to trigger an officer's duty of further inquiry is her knowledge of an obvious and unexplored reason to doubt the truthfulness of the allegations. When confronted with such a red flag, the officer should look into the matter even if she does not believe that what she will discover is likely to vitiate probable cause.").

the right was 'clearly established' at the time of the challenged conduct."[106] "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[107] The law must have a "sufficiently clear foundation in then-existing precedent," precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."[108]

What Third Circuit authority exists casts doubt upon such a theory's viability. As noted, "failure to investigate" claims are not clearly established within this circuit, and our Court of Appeals has indicated its doubts that such claims are viable on the merits.[109] This argument arises in a different context—it is implicated through a *Franks* recklessness inquiry instead of through a standalone claim—but the one casts doubt upon the other. Even the *Tanguay* court noted that "[t]his duty of further inquiry is not well understood," and only remanded because the district court ruled

---

[106] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

[107] *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (cleaned up)).

[108] *D.C. v. Wesby*, 583 U.S. 48, 63 (2018).

[109] *See Harvard v. Cesnalis*, 973 F.3d 190, 207 (3d Cir. 2020); *Geness v. Cox*, 902 F.3d 344, 354 n.5 (3d Cir. 2018); *White v. Andrusiak*, No. 14-7045, 2015 U.S. Dist. LEXIS 110076, at *2-3 (E.D. Pa. Aug. 19, 2015); *Wright v. City of Phila.*, 229 F.Supp. 3d 322, 332 n.3 (E.D. Pa. 2017). *See also Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) (quoting *Patterson v. New York*, 432 U.S. 197, 208 (1977) ("Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person").

"categorically" that it does not exist.[110] And the Court is aware of no in-Circuit case applying such an argument.

It is not clearly established in the Third Circuit that, when circumstantial evidence presents an "obvious and unexplored reason to doubt the truthfulness of the allegations," a failure to "inquire further" even when the officer "does not believe that what she will discover is likely to vitiate probable cause" evidences that officer's reckless disregard for the truth. So although circumstances implicating *Tanguay*'s rationale may present a challenging question in the appropriate case, the Court does not reach that question here.

As this is the third time Morgan has failed to plausibly allege Fourth Amendment false arrest and imprisonment claims against Brown, granting leave to amend would be futile. The claim is dismissed with prejudice.

### B.    Municipal Liability Claim Against Centre County

Morgan's municipal liability claim against Centre County is based upon the alleged failure to train prosecutors and police officers in identifying suspects and drafting, reviewing, and ratifying legally sufficient affidavits in support of criminal complaints.[111] A municipal body is a "person" which can be liable under Section

---

[110]  *Tanguay*, 787 F.3d at 46. Qualified immunity was inapplicable in *Tanguay* because it arose on a motion to suppress evidence.

[111]  Morgan includes his claims against Centre County in both Count I, which pleads false arrest and imprisonment actions under the Fourth Amendment, and Count II, which pleads a "1983-Monell Claim." Third Amended Complaint, Doc. 118 at 27, 38. "But *Monell v. Department of Social Services* is simply a decision clarifying how liability for constitutional violations can attach to municipal bodies under Section 1983; it is not a unique cause of action." *Thompson*

1983.[112] But a municipal body is only liable for its own acts, not the acts of its employees. A Section 1983 claim against a municipality must show (1) an underlying constitutional violation (2) caused by the municipality's execution of a municipal policy, custom or training.[113] Municipalities act through a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[114] This includes practices "so permanent and well settled as to constitute a custom or usage with the force of law."[115] As relevant here, it also includes a municipality's "deliberate indifference to constitutional rights" through failures, such as deficient training or supervision, [116] which "reflect[] a deliberate or conscious choice."[117]

"'[D]eliberate indifference' is a stringent standard of fault."[118] "A pattern of similar constitutional violations" is ordinarily necessary "to demonstrate deliberate indifference for purposes of failure to train."[119] It is clear from Morgan's current

---

*v. City of Williamsport*, No. 4:22-CV-01159, 2023 U.S. Dist. LEXIS 206935, at *11 (M.D. Pa. Nov. 17, 2023). So Count I and Count II are pleading the same cause of action against Centre County.

[112] *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). A municipality and its departments are treated as a single entity. *Jackson v. City of Erie Police Dep't*, 570 F.App'x 112, 114 (3d Cir. 1997); *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997).

[113] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).

[114] *Monell*, 436 U.S. at 690.

[115] *City of St. Louis v. Prapotnik*, 485 U.S. 112, 117 (1978).

[116] *City of Canton v. Harris*, 489 U.S. 378, 388, 392 (1989).

[117] *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (2019) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)).

[118] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997).

[119] *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

pleading that no such pattern is alleged, and Morgan does not argue otherwise. Instead, he rests his arguments upon the theory of single-incident liability.[120] Absent a pattern of violations, municipal liability only attaches if the need for training "can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifferent' to constitutional rights."[121]

"Where there is no underlying constitutional violation, there can be no *Monell* claim."[122] But even if Morgan's third amended complaint did set out facts supporting a Fourth Amendment violation, he fails to allege Centre County's deliberate indifference.

Because prosecutors are legally trained, the Supreme Court of the United States ruled that a failure to train them can *never* support a municipality's deliberate indifference to their constitutional violations.[123] So any alleged violations based on Centre County's failure to train prosecutors do not state a claim for relief in the absence of a pattern or practice of similar violations.

As to Officers Brown and Nelson, Morgan's reference to these officers as Centre County's "employee police officers"[124] is belied by other parts of his complaint, which clarify that, as PSP and Spring Township officials, they only work

---

[120] Brief in Opposition, Doc. 135 at 7.
[121] *See Canton*, 489 U.S. at 390 n.10.
[122] *Popiolek v. Twp. of Deptford*, No. 15-3291 (RBK/AMD), 2015 U.S. Dist. LEXIS 171248, at *9 (D.N.J. Dec. 22, 2015).
[123] *Connick*, 563 U.S. at 63-67.
[124] *See* Third Amended Complaint, Doc. 118 ¶187.

"in tandem with" Centre County.[125] As this Court already explained, the Centre County safety pamphlet appended by Morgan outlines coordination between Centre County, local police departments, and the PSP,[126] but that "does not explain what Centre County's role is in training local police agencies [or state police] and is perfectly consistent with the idea that it does not oversee or empower them."[127] Morgan's third amended complaint fails to provide well-pled allegations demonstrating how Brown or Nelson are trained, overseen, or supervised by Centre County. Their actions then provide no basis for Centre County's liability.

Moreover, Morgan's failure to train allegations fail because he does not set out what specific training existed, and what specific training was due.[128] This is a necessary plausibility requirement because "liability cannot rest only on a showing that the employees 'could have been better trained or that additional training was

---

[125] *See id.* ¶¶11-12, 24-25.

[126] Community Services Handbook, Doc. 118-2.

[127] Memorandum Opinion, Doc. 65 at 13.

[128] Morgan cites to contrary dictum in *Carter v. City of Philadelphia*, but *Carter* was decided before *Twombly* and *Iqbal* clarified the plausibility standard. Brief in Opposition, Doc. 134 (citing *Carter v. City of Phila.*, 181 F.d3 339, 358 (3d Cir. 1999)). More recent cases are unambiguous that more is required to plead a failure to train. *See Palakovic v. Wetzel*, 854 F.3d 209, 232 (3d Cir. 2017) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)) ("[A] failure to train claim requires a plaintiff to 'identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur.'"). *See also Wood v. Williams*, 568 F.App'x 100, 105 (3d Cir. 2014) ("The complaint was also deficient in alleging a claim for failure to train or supervise. The complaint did not allege specific facts showing any particular or specific policy or custom, or how it allowed the claimed constitutional violation to occur . . .")

available that would have reduced the overall risk of continued injury.'"[129] In any case, Morgan could not prevail on a single-incident liability theory here even if such improperly pled allegations did not doom his claim. Given that Morgan does not allege that officers receive no training or education on investigatory techniques *at all*,[130] it is not plausible that officers equipped with such general training would foreseeably cause constitutional violations through misidentifying suspects, merely because of a lack of training on the specific situation faced by Morgan here.[131]

The Court recognizes that single-incident liability is frustratingly difficult to plead—but that is because its scope has been drastically narrowed by controlling precedent. Some situations do call for single-incident liability, but in the ordinary course of events, as in Morgan's case, a Section 1983 plaintiff must plausibly allege a pattern of similar violations for his claim to survive dismissal.

Morgan's municipal liability claims therefore fail. Given the number of reasons these claims cannot survive and given the number of opportunities Morgan

---

[129] *Thomas*, 749 F.3d 217, 226 (3d Cir. 2014) (citing *Colburn*, 946 F.2d 1029-30).

[130] Nor is this a reasonable inference based on the third amended complaint given that probable cause is the bread-and-butter of police work—assuming otherwise would require the Court to write additional allegations into the complaint on Morgan's behalf. *See Semerod v. Siko*, No. 4:24-CV-1165, 2024 U.S. Dist. LEXIS 180741, at *13 & n.67 (M.D. Pa. Oct. 2, 2024).

[131] *Compare Connick*, 563 U.S. at 67 (explaining that where prosecutors received general legal training and were "familiar with the general *Brady* rule," nuanced training addressing the specific scenario causing constitutional violations was not necessary for the municipality to avoid single incident liability). *Cf. Estate of Roman*, 914 F.3d at 799-800 (plaintiff alleged that, for over twenty years, the City did not train some officers at all, nor did its training "cover the basics of the Fourth Amendment").

has had to amend his complaint, his Section 1983 claims against Centre County are also dismissed with prejudice.

## V.    CONCLUSION

Both claims in Morgan's third amended complaint fail to state a claim, so Brown and Centre County's motions to dismiss are granted. Leave to amend is denied.  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."[132]  A complaint is "futile" if even, as amended, it would fail to state a claim upon which relief could be granted.[133]  Although there is a "liberal pleading philosophy of the federal rules" no amendment will be permitted because, as explained above, another opportunity to plead a case through fourth amended complaint would be futile.[134]

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[132]  *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).
[133]  *Id.*
[134]  *See Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).